## IN THE SUPREME COURT OF MISSISSIPPI

### NO. 94-CT-00879-SCT

*JORGE RAMOS a/k/a JORGE ANTONIO RAMOS*

*v.*

*STATE OF MISSISSIPPI*

### ON PETITION FOR WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 08/12/94 |
| TRIAL JUDGE: | HON. JAMES W. BACKSTROM |
| COURT FROM WHICH APPEALED: | CIRCUIT COURT OF JACKSON COUNTY |
| ATTORNEY FOR APPELLANT: | MICHAEL W. CROSBY |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  DEIRDRE McCRORY |
| DISTRICT ATTORNEY: | KEITH MILLER |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND REMANDED - 3/26/98 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 4/16/98 |

**EN BANC.**

**ROBERTS, JUSTICE, FOR THE COURT:**

### Introduction

¶1. This case is before the Court sitting en banc on a Petition for Writ of Certiorari. Jorge Ramos was convicted by a jury of the Circuit Court of Jackson County, Mississippi, on July 29, 1994, of Felony Possession of Marijuana with Intent and Possession of a Controlled Substance With Intent, and sentenced to serve fifteen years in the custody of MDOC. Ramos was additionally ordered to pay a fine of $10,000. The Court of Appeals affirmed the judgment and sentence of the lower court by decision rendered on June 3, 1997. The issues presented for certiorari review concern violations of Rule 4.06 of the Uniform Criminal Rules of Circuit Court Practice[1] and the trial court's allegedly improper admission into evidence of inculpatory statements and documents not disclosed to Ramos pursuant to his written discovery request and motion, and the admission by the trial court of certain expert opinion testimony from a police officer, not produced or disclosed to Ramos, in the form of lay opinion. We conclude that the cumulative errors found in the rulings of the trial court deprived Jorge Ramos of a fair trial, and reverse and remand for a new trial.

# Facts

¶2. On January 30, 1993, Jorge Ramos, a 21 year old Mexican resident alien was passing through Mississippi on Interstate Highway I-10. Ramos, his wife and two children were traveling from Edcouch, Texas to a labor camp in Jacksonville, South Carolina, where they were going to work in the fields. Sergeant Bosarge with the Jackson County Sheriff's Department stopped Mr. Ramos for "weaving in the roadway." Bosarge walked the K-9 drug dog which accompanied him in his unit around Ramos' car. The dog alerted, and Bosarge obtained consent from Ramos to search Ramos' car. Bosarge located secret compartments under the car which contained thirty-seven pounds of marijuana. Bosarge's written narrative, which details the stop and arrest, makes no reference to any statements made by Ramos.

¶3. When the marijuana was located, Bosarge called the Narcotics Task Force, and the case investigator, Donald Bourgeois, came to assist. Bourgeois prepared a detailed, typed report concerning the arrest of Ramos and the recovery of the marijuana. Bourgeois' report states that "[t]he officers talked to the driver and he stated that he had 50 lbs. of marijuana in false compartments under the car." Both of the above mentioned reports were provided in discovery pursuant to written request under Rule 4.06 and a detailed motion for discovery.

¶4. At trial, Ramos denied making the statement that he " had 50 pounds of marijuana in false compartments under the car." Counsel argued that an inculpatory statement of such importance would have been referenced in Bosarge's narrative report--it was not. Following Bosarge's testimony, the State advised the court that there was more information which it wished to introduce which was not provided in discovery, as follows:

> 1. On the side of the road, Ramos told Bourgeois that he had between 40-50 pounds of marijuana in the vehicle.
>
> 2. At the garage where the marijuana was removed, a subsequent oral statement was made by Ramos to Bourgeois. During the search of the vehicle, additional marijuana was found in the doors. Bourgeois approached Ramos and asked "how did they put the packaging in the framing of the car, and he explained to me that they took and cut holes in the back door panels of the passenger side of the vehicle and they were stuffed in there with duct tape." Bourgeois further stated that Bosarge was present during the time this statement was made, but Bosarge was never called back to the witness stand to testify about the oral statement, not revealed in discovery, which Ramos denied making.
>
> 3. Ramos allegedly stated that "when Mrs. Ramos purchased the automobile[2], he took it to a shop and he had altered it and hid the marijuana in it without her knowledge."
>
> 4. Ramos told Bourgeois to look in the floorboard area in the back and there was more marijuana. Bourgeois looked there, and more marijuana was located.

¶5. Bourgeois then testified that he revealed all the above information to the attorney for the defendant when discussing the forfeiture and bond reduction from $200,000 to a reasonable amount. Ramos' counsel took exception to the allegation and stated that his conversation with Bourgeois involved the fact that Mrs. Ramos was in jail and that the children were in the hands of strangers at a

detention center. Mrs. Ramos needed help with a bond reduction and was willing to consent to the forfeiture of the vehicle and $533 if it would get a recommendation of a bond reduction for the Ramoses.

¶6. The lower court overruled counsel's objections to allowing these previously undisclosed inculpatory statements admitted before the jury.[(3)](#)

¶7. Bourgeois admitted on cross-examination that he reviewed his report the next workday, but he did not make any notation of all the incriminating information outlined above, or the alleged conversation with counsel.

¶8. The Ramoses claimed that subsequent to their arrest, they investigated Jose Santana, the man who allegedly sold them the vehicle in issue, and discovered that he was a convicted drug smuggler, and was wanted by the police. Prior to trial, and pursuant to reciprocal discovery, a copy of Santana's conviction was provided to the State along with a Bill of Sale for the vehicle dated January 27, 1993. The State was told that Ramos intended to use this information in trial. The State advised that it would have no objection or dispute that the transaction took place on the date alleged, and stated that someone had called the Texas Department of Motor Vehicles to confirm this information. The State related that all documents it had relating to the vehicle had been provided to the defense.

¶9. After Mrs. Ramos testified at trial, the State confronted her and impeached her testimony with documents which it previously claimed that it did not have in its possession. This information was in the possession of the State, but not provided. The information was allowed into evidence over the defense's objection that this constituted a further violation of discovery and improper impeachment.

¶10. A police officer, not qualified as an expert witness, gave lengthy testimony concerning the marijuana itself, and Ramos was not told that the marijuana had been destroyed three months prior to trial. The judge did not allow Bourgeois' order into evidence ordering the destruction of the marijuana, but allowed Bourgeois to testify, in reply to the State's question of why the marijuana had been destroyed, that :

> A. Simply because I thought this case, the guy was pleading guilty to it, and it wouldn't be a trial involved in it, and it was also taking up added space in our evidence vault which we had no room for. We try to destroy the evidence as soon as we can, especially if we know trial--that it's not going to court. And under this specific case, we felt like it was not going to court.

¶11. On cross-examination, Bourgeois admitted that he could have picked the phone up and called the District Attorney's Office, the court, or the jail screen computer to determine the status of the case, prior to destroying the marijuana. There is no indication that Ramos ever intended to plead guilty, and he maintained at trial that he knew nothing about the marijuana found in his vehicle.

¶12. Ramos made a prompt objection each time testimony was allowed as to matters that should have been disclosed but were not disclosed pursuant to discovery requests, followed by a motion for mistrial/continuance which was denied. Ramos was convicted of Possession of Controlled Substance with Intent, and sentenced to serve fifteen years in the custody of MDOC, and ordered to pay a $10,000 fine. The Court of Appeals, Payne, J., noted that each of the incidents outlined above constituted error, and that each error was properly preserved for appellate review, but found that the errors

constituted harmless error which did not require reversal. This finding is contrary to published decisions of this Court.

## Issues Raised for Certiorari Review

¶13. Ramos asserts that the decision of the Court of Appeals is in conflict with prior published opinions of this Court in that:

**1. The Court of Appeals found no error or harmless error in the trial court's admission into evidence of inculpatory statements and documents not disclosed to the Petitioner despite written discovery request, and found harmless error in the trial court's failure to grant the Motion for a Mistrial/Continuance following the *Box* guidelines.**

**2. The Court of Appeals found that the State should have provided to Petitioner, pursuant to his discovery motion, a document relating to the sale of the car, and that the court should have granted the Petitioner a continuance pursuant to *Box*, but that the error in failing to do so was harmless because it was of the opinion that "the Appellant could not have rebutted the evidence even if it had been granted the continuance."**

**3. The Court of Appeals found no error in the admission of certain expert opinion testimony by the trial court, from a police officer in the form of lay opinion, which therefore did not require him to be qualified as an expert, and the substance of said testimony was not produced or disclosed to Petitioner, although requested in the discovery motion.**

## Analysis and Authority

**I. DID THE TRIAL COURT ERR IN FAILING TO GRANT A MISTRIAL OR CONTINUANCE WHEN THE STATE VIOLATED DISCOVERY RULES BY INTRODUCING MULTIPLE INCULPATORY STATEMENTS AND DOCUMENTS WHICH HAD NOT BEEN PROVIDED TO THE DEFENSE THROUGH DISCOVERY?**

**A. <u>STATEMENTS MADE BY RAMOS</u>**

¶14. Two reports were given to Ramos pursuant to a Unif. R.Crim.Cir. Ct. 4.06 discovery motion, and an additional detailed written discovery motion. These were the initial reports by Bosarge, which made no mention of any inculpatory statement by Ramos, and the Bourgeois' report, which contained one inculpatory statement allegedly made by Ramos that "[t]he officers talked to the driver and he stated that he had 50 lbs. of marijuana in false compartments under the car." Ramos, through counsel, denied in opening statements that this statement had been made, and noted that Bosarge had made no mention of such a statement in his report, and that further, thirty-seven pounds of marijuana had been found, not fifty, and questioned why Ramos would admit to hiding thirteen more pounds of marijuana than had been actually found.

¶15. Following opening statements, Bosarge testified that, although he had not mentioned it in his report, on the side of the Interstate after the arrest and while waiting on backup, he advised Ramos of

his rights, and then testified:

> We talked on the roadside a few minutes in reference to, you know, where he was going. You know, I was checking the paperwork on the car. And I then asked him again, you know: You ought to just come clean with it and tell me, you know, how much narcotics you have in the car. And at that time he just, he just shook his head and said it should be about forty or fifty pounds.

¶16. Counsel for Ramos objected and said the facts were being altered in response to the opening statement. The objection was overruled. After Bosarge's testimony, the State advised the court that there was a matter which needed to be taken up outside the jury's presence. The Assistant District attorney advised the court that he interviewed the case investigator, Donald Bourgeois, for the first time during the lunch recess, and

> he has some testimony that was not given up in discovery per se as it is written in here, but the testimony I think will show that Mr. Crosby [counsel for Ramos] has knowledge of the information, and I'd like to do it now because I know Mr. Crosby is going to object at trial.

¶17. Bourgeois' newly provided information consisted of the following inculpatory statements:

> 1. On the side of the road, Ramos told Bourgeois that he had between 40-50 pounds of marijuana in the vehicle.

> 2. At the garage where the marijuana was removed, a subsequent oral statement was made by Ramos to Bourgeois. During the search of the vehicle, additional marijuana was found in the doors. Bourgeois approached Ramos and asked "how did they put the packaging in the framing of the car, and he explained to me that they took and cut holes in the back door panels of the passenger side of the vehicle and they were stuffed in there with duct tape." Bourgeois further stated that Bosarge was present during the time this statement was made, but Bosarge was never called back to the witness stand to testify about the oral statement, not revealed in discovery, which Ramos denied making.

> 3. Ramos allegedly stated that "when Mrs. Ramos purchased the automobile, he took it to a shop and he had altered it and hid the marijuana in it without her knowledge."

> 4. Ramos told Bourgeois to look in the floorboard area in the back and there was more marijuana. Bourgeois looked there, and more marijuana was located.

¶18. Bourgeois then testified that he revealed all the above information to the attorney for the defendant when discussing the forfeiture and bond reduction from $200,000 to a reasonable amount. Ramos' counsel advised the court that he would not have made a fool of his client and himself if such information had been revealed, and stated that his conversation with Bourgeois involved the fact that Mrs. Ramos was in jail, and the children were in the hands of strangers at a detention center. Mrs. Ramos needed help with a bond reduction and was willing to consent to the forfeiture of the vehicle and $533 if it would get a recommendation of a bond reduction for the Ramoses.

¶19. Bourgeois admitted on cross-examination that he reviewed his report the next workday, but did not make any notation of the incriminating information outlined above.

Q. At any time, in any place, did you ever indicate that the defendant said anything except that he had fifty pounds of marijuana in the vehicle?

A. No, sir, I don't have any documentation of that.

Q. In fact, what you said here today was that he had between forty to fifty pounds. Nowhere in any record does he say forty pounds as far as you indicate in any regard; correct?

A. No, sir.

¶20. Bourgeois further admitted that he used a video camera to tape the removal of marijuana, and that he had access to tape recording equipment, but at no time and in no way did he attempt to document the confession or statement of Ramos. Bourgeois also admitted that Ramos executed a signed waiver of rights, but that no officer attempted to take a formal statement. Over the objection of defense counsel, Bourgeois was allowed to testify. Counsel moved for a mistrial/continuance pursuant to the *Box* guidelines.

¶21. Rule 4.06 (now 9.04) states in pertinent part:

(a) . . . the prosecution *shall disclose* to each defendant or to his or her attorney, and permit him or her to inspect, copy, test, and photograph, without the necessity of court order, the following which is in the possession, custody, or control of the State, or the existence of which is known or by the exercise of due diligence may become known, to the prosecution:

(1.) Names and addresses of all witnesses in chief proposed to be offered by the prosecution at trial, together with a copy of the *contents of any statement*, written, recorded or otherwise preserved of each such witness *and the substance of any oral statement made by any such witness;*

(2.) Copy of any written or recorded statement of the defendant *and the substance of any oral statement made by the defendant*

Unif. Crim. R. Cir. Ct. Prac. 4.06(a)(1) & (2) (emphasis added).

¶22. Ramos argues that Rule 4.06 requires that any alleged inculpatory statements be provided by the defense in discovery, and that the State was in direct violation of the discovery rules in failing to provide the pertinent inculpatory statements to him prior to trial, and cites *Box v. State*, 437 So. 2d 19 (Miss. 1983) in support of his assertion that he was entitled to a continuance or mistrial.

¶23. The Court of Appeals held:

Ramos is correct in that *Box v. State* and progeny provide guidelines for trial judges in dealing with violations of discovery. *See also Roberson v. State*, 595 So. 2d 1310, 1316 (Miss. 1992). The Mississippi Supreme Court has set forth the following procedures for the trial court to follow when faced with a discovery violation:

1) Upon defense objection, the trial court should give the defendant a reasonable opportunity to become familiar with the undisclosed evidence by interviewing the witness, inspecting the

physical evidence, etc.

2) If, after this opportunity for familiarization, the defendant believes he may be prejudiced by lack of opportunity to prepare to meet the evidence, he must request a continuance. Failure to do so constitutes a waiver of the issue.

3) If the defendant does request a continuance, the State may choose to proceed with trial and forego using the undisclosed evidence. *If the State is not willing to proceed without the evidence, the trial court must grant the requested continuance.*

¶24. The Court of Appeals went on to find that Ramos' attorney requested a mistrial instead of requesting a continuance, but that our case law holds that a motion for a mistrial will suffice to preserve the issue for appeal, citing *West v. State*, 553 So. 2d 8, 18 n. 6 (Miss. 1989). The Court Of Appeals further found that "Procedurally, Ramos did everything he was supposed to do in addressing an alleged discovery violation and perhaps a continuance should have been granted. Nevertheless, we find that the assigned errors, if errors at all, do not warrant reversal."

¶25. The finding of harmless error appears to contradict published decisions of this court. In *West v. State*, 553 So. 2d 8, 17 (Miss. 1989), we found that the fact that the prosecution fails to unearth certain evidence until the last minute does not "eviscerate[] the prejudice to a defendant caught unaware, *nor the necessity for reversal"* where the trial court denies the defense request for a reasonable continuance, citing Rule 4.06(e). In *West*, citing *Acevedo v. State,* 467 So. 2d 220 (Miss. 1985), this Court held:

> This Court reversed *Acevedo*, holding that the prosecution had "violated its continuing duty to supplement discoverable matters with newly discovered material or information" under Rule 4.06(e). *Acevedo*, 467 So. 2d at 224. Noting that the defendant would have had the opportunity to rebut directly the expert's conclusions had he known of them, the Court concluded that the prosecution's discovery violation "was beyond the power of correction by cross-examination, since defense counsel had no notice or opportunity to prepare for an effective cross-examination." *Acevedo*, 467 So. 2d at 224.

*West*, 553 So. 2d at 17.

¶26. In *Darght*y *v. State*, 530 So. 2d 27 (Miss. 1988), we reversed and remanded when the trial court failed to follow the *Box* guidelines where a defendant violated the discovery rules, holding:

> Even-handed application of the Rule requires the same procedure to be followed when the State objects to testimony because of a defendant's violation as when the defendant objects for the same reason. *See Coates v. State*, *supra*, at 467; *Acevedo v. State*, 467 So. 2d 226, 224 (Miss. 1985) . . . .
>
> Loveberry's testimony being relevant and competent, it was prejudicial error to exclude it without following our procedural guidelines. Accordingly, *we reverse and remand for another trial.*

*Id.* at 33 (emphasis added).

¶27. In *Hentz v. State*, 489 So. 2d 1386 (Miss. 1986), we admonished the prosecuting attorneys that they "should make available to attorneys for defendants all . . . material[s] . . . and let the defense attorneys determine whether or not the material is useful in the defense of the case. We direct the attention of trial judges to this problem and suggest that they diligently implement this suggestion *in order to dispense with costly errors, which might cause reversal of the case. Barnes v. State,* 460 So. 2d 126 (Miss. 1984); *Harris v. State*, 446 So. 2d 585 (Miss. 1984); *Morris v. State,* 436 So. 2d 1381 (Miss. 1983)." *Id.* at 1388. (emphasis added). In *Dotson v. State*, 593 So. 2d 7 (Miss. 1991), this Court reproved, "Now, we take this opportunity to reinforce that which we stated in *Hentz* with a simple message to the bench and bar. *Read Hentz! Apply Hentz!" Id.* at 12 (emphasis added).

¶28. We find that the alleged inculpatory statements made by Ramos to Bourgeois should have been provided to defense counsel. The State failed to produce the substance of the oral statements said to have been made which were inculpatory and prejudicial, and further, the trial court did not follow the *Box* procedural guidelines, which constitutes reversible error.

## B. THE DOCUMENTS RELATING TO THE PURCHASE OF THE VEHICLE DRIVEN BY RAMOS AT THE TIME OF HIS ARREST

¶29. Allegedly, subsequent to the arrest, the Ramoses discovered that the man who sold them the recently purchased 1981 Lincoln automobile Ramos was driving at the time of his arrest, was a convicted drug smuggler, and was wanted by the police. Prior to trial, and pursuant to reciprocal discovery, a copy of Santana's conviction was provided to the State, along with a Bill of Sale for the automobile. The State was advised that Ramos intended to use this information in trial, and the State, in turn, advised defense counsel that it would not dispute that the transaction took place on the date alleged, and further told defense counsel that all the documents it had relating to the sale of the car had been provided to the defense. The State asserted that it possessed no title or other such documents and had no documents which contradicted the Ramoses' position.

¶30. After Mrs. Ramos testified, the State confronted the defense with documents which it had previously claimed it did not have in its possession. The previously undisclosed documents were used to contradict Mrs. Ramos' testimony concerning the date of the sale of the vehicle, the identity of the seller, and the amount of the sale. This information was in the possession of the State from the time the vehicle was confiscated following Ramos' arrest, but was not provided or disclosed to the defense in discovery.[4] The Court of Appeals held:

> . . . . Ramos claims that he was surprised when the State produced this document at trial because the State had previously informed him that they did not have any documents pertaining to the sale of the car. While the State should have provided the documents in discovery and the judge should have granted a continuance, the error is harmless.

The Court of Appeals continues that:

> The Mississippi Supreme Court has stated on numerous occasions that the purpose of Rule 4.06 is "to avoid unfair surprise to either the state or defendant at trial." *Ghoston v. State*, 645 So. 2d 936, 939 (Miss. 1994). Certainly, Ramos cannot claim surprise as the registration of the car was taken from his personal possessions. Ramos' surprise was that the State found the public record to which there could be no rebuttal even if the Appellant had been "noticed" with the

information on discovery.

Ramos stated, in the brief of the appellant:

> Although the State had denied possession of those documents earlier in the day, they magically produced the documents in time to ambush the defendant's wife without warning during her cross-examination. The discrepancies could be explained, but under ambush and with the passage of one and one-half years, it was difficult for the witness to seem credible when called a liar by the prosecutor in the middle of the trial. This evidence was allowed into evidence over the objection of the defense that it was a further violation of discovery and improper impeachment.

¶31. The cases and analysis applied to the first discovery violation also apply to this second issue and discovery violation, and this error compounded by the previous error constitutes reversible error.

> **II. DID THE TRIAL COURT ERR IN ALLOWING DEPUTY BOSARGE TO TESTIFY AS A LAY WITNESS INSTEAD OF REQUIRING THE STATE TO QUALIFY BOSARGE AS AN EXPERT [AND THEREFORE ALLOWING INTO EVIDENCE CERTAIN STATEMENTS NOT DISCLOSED IN DISCOVERY]?**

¶32. Ramos contends that the trial court committed reversible error in allowing Deputy Bosarge to testify, in the form of lay opinion, as to the following: (1) the street value of marijuana; (2) that based on his "experience and training as a law enforcement officer" the hidden compartments in Ramos' vehicle were sealed with fresh tar, which is used by drug smugglers to mask the smell of marijuana and blend with the under body of the car; (3) the marijuana was pressed into hard bricks and wrapped in duct tape, which is the normal method used by drug smugglers to smuggle; and (4) when the packages were cut open, in his opinion, the marijuana was fresh.

¶33. Ramos argues that all of the above statements were based on Bosarge's training and experience as a deputy sheriff, and therefore should have been classified as expert opinion and subjected to the foundational requirements of Miss. R. Evid. 702 and the discovery rules of Unif. Crim. R.Cir. Ct. Prac. 4.06(a)(4).[5]

¶34. The Court of Appeals held:

> In the present case, we believe that Deputy Bosarge should have been proffered as an expert and therefore qualified as such before being permitted to testify. *See Seal v. Miller*, 605 So. 2d 240, 244 (Miss. 1992)(calling on a police officer to respond to a question based on his experience as an officer investigating accidents is by definition not a lay opinion). The error, however, is negligible in light of the fact that Ramos was arrested while driving a vehicle containing thirty-seven pounds of marijuana. We therefore find that reversal is not required in this instance.

¶35. This holding is contrary to published opinions of this Court. In *Sample v. State*, 643 So. 2d 524 (Miss. 1994), this Court held:

> There is often a very thin line between fact and opinion. The problem with Corr's "expert" testimony is that it runs afoul of our stated policy requiring that expert witnesses be first

tendered as such before being allowed to express expert opinions. *Roberson v. State*, 569 So. 2d 691, 696 (Miss. 1990). To sanction this testimony attempts to circumvent this policy by the familiar retreat to Miss. R. Evid. 701, which some attorneys would use to justify all transgressions of our discovery and evidentiary policies concerning expert opinion.

*Id.* at 529.

¶36. The Court further held:

It is important that we not blur the distinction between Rules 701 and 702, not so much for admissibility, as for notice and opportunity to prepare rebuttal. Expert testimony and opinions are subject to special discovery rules in both the civil and criminal arenas. Miss. R. Civ. P. 26(b)(4); Unif. R. Cir. Ct. 4.06(a)(4).. . . .

Corr was allowed to express his opinions concerning the value, normal street usage and customary packaging of marijuana based upon his training and experience as a narcotics officer. He was, therefore, a Rule 702 expert. *Wells v. State*, 604 So. 2d at 279.. . .

*Id.* at 530.[6]

¶37. In *Couch v. City of D'Iberville*, 656 So. 2d 146, 153 (Miss. 1995), this Court held that if the witness must possess some experience or expertise beyond that of the average, randomly selected adult, the opinion is a Rule 702 opinion and not a Rule 701 opinion, citing *Sample v. State,* 643 So. 2d 524, 529-530 (1994); *see also Mississippi State Highway Commission v. Gilich*, 609 So. 2d 367, 377 (Miss. 1992)(lay opinions are those which require no specialized knowledge however attained); *Seal v. Miller*, 605 So. 2d 240, 244 (Miss. 1992)(question calling on a police officer to respond based upon experience as an officer investigating accidents is by definition not a lay opinion).

¶38. Our case law characterizes the testimony of Officer Borsarge as expert, not lay testimony. As such, it is subject to the discovery provisions of Rule 4.06. This cause is reversed and remanded for a new trial.

¶39. **REVERSED AND REMANDED.**

**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., BANKS, McRAE, SMITH, MILLS AND WALLER, JJ., CONCUR.**

1. The current version of this rule is contained at Rule 9.04 of the Uniform Rules of Circuit and County Court Practice.

2. The Ramoses claimed that they had just recently purchased this automobile, were meeting the person who had sold it to them in South Carolina so that he could make some necessary repairs to the automobile, and that they knew nothing about the marijuana found in the automobile. The State claimed it did not have any documents relating to the automobile in its possession, and then produced them at trial to impeach the testimony of Mrs. Ramos, as it related to the purchase of the automobile

in question.

3. Rule 4.06 expressly states that such statements must be disclosed pursuant to a discovery request made under the rule.

4. Rule 4.06(a), now 9.04, provides in pertinent part that the prosecution *must disclose " (5.) . . . any physical evidence. . . relevant to the case or which may be offered in evidence.*" (emphasis added).

5. Rule 4.06(a)(4) states in pertinent part that the prosecution must disclose to each defendant any reports or statements of experts*,* written, recorded or otherwise preserved, made in connection with the particular case and the substance of any oral statement made by any such expert.

6. *Sample,* Prather, P.J., Hawkins, C.J., Sullivan and Banks, JJ., concurring. Dan M. Lee, P.J., concurring in results. McRae, J., dissenting with separate written opinion, Smith, J., dissenting with a separate written opinion joined by Pittman and Roberts, JJ.