PAYNE, J.,
for the Court:
PROCEDURAL POSTURE
¶ 1. Duean Robinson was convicted after a jury trial in the Circuit Court of Warren County, the Honorable Isadore Patrick presiding, of two counts of armed robbery and one count of burglary of a business and was sentenced to serve twenty years in the custody of the Mississippi Department of Corrections with five years suspended on each armed robbery count and a term of seven years in the custody of the Mississippi Department of Corrections on the burglary count. All sentences run concurrently. Upon denial of his JNOV motion, Robinson timely perfected this appeal, raising the following three issues: 1) whether the trial court denied appellant’s constitutional rights to a trial by jury by failing to conduct examination of jurors to determine if they had overheard any de *849 rogatory statements made about appellant and if so, whether these statements would taint their objectivity, 2) whether the prosecution violated the rules of discovery by not providing appellant with a copy of a statement by the victim made to a police officer, and 3) whether the photo line-up was unduly suggestive.
¶ 2. Upon review of the record and briefs, we find each of appellant’s assignments of error to be without merit and overrule the same. Accordingly, we affirm the conviction and sentence in this matter.
FACTS
¶ 3. Sue and Hugh Bearup, residents of New Mexico, were lodging at the Best Western Motel located off Interstate 20 in Vicksburg. The Bearups were in Vicksburg to meet and visit with members of Sue’s family. On the morning of July 8, 1996, Sue answered a knock on her motel door, thinking that it was a family member. When she opened the door, Robbie Lewis[1] forced his way into the room, followed by Robinson. The pair demanded money. According to Sue’s testimony, Robinson grabbed her around the throat and choked her. The couple was forced into the motel bathroom at gunpoint. Robinson and Lewis then took money from Sue’s purse and a wallet from Hugh’s pants and fled the scene. A motel night clerk witnessed the robbers fleeing and identified the vehicle they were driving — a blue Volvo.
¶ 4. A law enforcement bulletin was issued for the vehicle and the two suspects based on the information provided by the victims and the motel night clerk. After an initial pursuit by officers from the Clinton Police Department, the suspects entered the city limits of Jackson where they unsuccessfully attempted to flee. The suspects were apprehended. In addition to a significant amount of cash recovered from each suspect and from the patrol car in which they were temporarily held until they were released to Vicksburg police officers, a novelty currency was also recovered from the scene which was later identified by Sue as being her property.
¶ 5. Robinson and Lewis were indicted by a Warren County Grand Jury on October 30, 1996. Subsequently, Lewis pled guilty to two counts of armed robbery and one count of business burglary, and Robinson was convicted after a jury trial of the same charges and sentenced to a term of imprisonment in the custody of the Mississippi Department of Corrections. After the trial court overruled his motion for JNOV, Robinson perfected this appeal in which he raises three errors for our review.
ISSUES PRESENTED AND ANALYSIS
I. WHETHER THE TRIAL COURT DENIED APPELLANT’S CONSTITUTIONAL RIGHTS TO A TRIAL BY JURY BY FAILING TO CONDUCT EXAMINATION OF JURORS TO DETERMINE IF THEY HAD OVERHEARD ANY DEROGATORY STATEMENTS MADE ABOUT APPELLANT AND IF SO, WHETHER THESE STATEMENTS WOULD TAINT THEIR OBJECTIVITY
¶ 6. Robinson’s first assignment of error relates to an incident that he maintains tainted the jury pool in this case. Following voir dire, the trial judge recessed the proceedings while the attorneys met with potential jurors who had special problems. Before the recess, the trial judge admonished the panel members not to allow anyone to contact them about this matter. After the trial judge and attorneys completed their discussions with potential jurors who had special problems, the trial judge recessed the proceedings to allow *850 the attorneys time to review their notes from voir dire.
¶ 7. Next in the record is an in-chambers conference with the judge, attorneys, and Juror # 52, Roger Lester. Mr. Lester related that during the break, an individual, later identified as Paul Wade, an acquaintance of Robinson who had come to court that day with Robinson’s attorney, had in his presence asked a witness and him “you about ready to hang a n-, aren’t you?” Lester reacted by backing away from Wade. The court’s bailiff, Mr. Knite, informed the judge that he had approached Wade regarding the statement, and Wade had admitted making that statement. The trial judge banned Wade from the courthouse. The court inquired of juror Lester as to whether the comment would prejudice him in sitting on Robinson’s jury, to which he responded in the negative. Additionally, Lester told the judge that no other jurors were present when Wade made his inappropriate comment.
¶ 8. Robinson cites URCCC. 3.12, which provides that upon motion, the trial judge may declare a mistrial for misconduct that results in “substantial and irreparable prejudice to the movant’s case.” Additionally, Robinson cites Brent v. State, 632 So.2d 936, 942 (Miss.1994) where the Mississippi Supreme Court sustained a trial judge’s decision to deny a mistrial, but reaffirmed the well-settled rule setting forth the “substantial and irreparable prejudice” standard for a declaration of a mistrial.
¶ 9. After reviewing the record, we find that Robinson’s assignment of error in this regard is procedurally barred as Robinson’s trial counsel failed to move for a mistrial contemporaneously to the incident’s occurrence at the trial level. Thus, as is well-established by Mississippi Supreme Court precedent, the possible error, if any, was not preserved for our review. Turner v. State, 721 So.2d 642, 645 (Miss.1998); Box v. State, 610 So.2d 1148, 1154 (Miss.1992); Sand v. State, 467 So.2d 907, 910 (Miss.1985); Blackwell v. State, 44 So.2d 409, 410 (Miss.1950).
II. WHETHER THE PROSECUTION VIOLATED THE RULES OF DISCOVERY BY NOT PROVIDING APPELLANT WITH A COPY OF A STATEMENT BY THE VICTIM MADE TO A POLICE OFFICER
¶ 10. Robinson’s second assignment of error alleges a violation of the rules of discovery by the prosecution. The alleged problem came to light during the direct examination by the prosecutor of Detective Billy Brown of the Vicksburg Police Department. In the transcript of an interview conducted with the victims, there was a typographical error discovered, indicating that Detective Brown had made a particular comment concerning the identification of Robinson that Hugh Bearup actually made. Robinson’s trial counsel objected to the “change” of some of the prosecution’s evidence on the basis that Hugh Bearup had already testified, and the defense had been denied the opportunity to impeach him on the discrepancy between the recording and the transcription. Because of the discrepancy, the trial court allowed Robinson’s counsel to listen to the entire tape over the lunch recess. After listening to the tape, Robinson’s counsel lodged the same objection with regard to the typographical error and his lost opportunity to impeach Mr. Bearup on that inconsistency. Additionally, an objection was raised concerning a separate statement given by Hugh Bearup at the scene which was audible on the recording of Sue Bearup’s statement given at the scene. The following in-chambers record excerpts are helpful:
By the Court: ... [b]ut, I understand that, but I understand also from Mr. Goodsell that there were two separate statement [sic] of Mr. and Mrs. Bear-up’s.
By Robinson’s Counsel: Mrs. Bearup actually. Actually, I could hear another statement happening of Mr. Bearup *851 while Mrs. Bearup was giving the statement to, apparently, Detective Brown. There is apparently another statement of Mr. Bearup out there, or it sounds like somebody was taking it down. I mean you can hear the other statement being taken from the statement by Mrs. Bearup being taken at the scene of the motel.
By the Court: Well, I guess the question is how many statements were taken. I understand that you may have questioned them initially at the hotel but was that transcribed or recorded?
By Detective Brown: It was recorded. It wasn’t transcribed, [y]our Honor.
By the Court: You have a recorded statement at the hotel?
By Detective Brown: Yes, sir.
By the Court: Is that here?
By Detective Brown: Yes sir, it is right here.
By the Court [to Robinson’s Counsel]: You have listened to that?
By Robinson’s Counsel: I’ve listen [sic] to it [y]our Honor, but now I am not certain if the other witness, who would have been Mr. Bearup, was being recorded at the same time because apparently someone else was taking the statement from him at the motel. You can hear it on this tape recorder.
By the Court: Well, I ask you, Officer, was someone else questioning Mr. Bear-up?
By Detective Brown: I was in the bathroom of the hotel room questioning Ms. Bearup and someone else was talking to Mr. Bearup outside the bathroom. I don’t know if they—
By the Court: Did they record that statement?
By Detective Brown: I don’t know, [s]ir, I was only recording Mrs. Bearup’s.
By the Court: Do you know who was questioning Mr. Bearup?
By Detective Brown: No, sir, I don’t. It could have been just the police officer asking a question, it could have been Lieutenant Dent. The MT’s were in there asking him medical questions.
By the Court: But, as a detective, you are the only detective that made a recording of any statements that night?
By Detective Brown: I made — I made a recording of Mrs. Bearup at the scene of the crime and then of them together at the police station
The prosecutor denied knowing about the second, untranscribed recording and learned of it at the same time as Robinson’s counsel. At the time of the discovery of the second statement, the Bearups were still available to be recalled by the defense for questioning and impeachment regarding the second statement. Therefore, the trial judge overruled the motion for mistrial. In the defense’s case, Robinson’s counsel called Detective Brown and Sue Bear-up as witnesses.
¶ 11. The Mississippi Supreme Court has established that the purpose of our discovery rules is to eliminate trial by ambush and unfair surprise at trial. Frierson v. State, 606 So.2d 604, 607 (Miss.1992). Upon learning of a discovery violation, the procedural mechanisms to cure the violation are abundantly clear: first, the trial court should grant the defense a reasonable opportunity to review and become familiar with the discoverable material; second, if after a reasonable opportunity to review the material the defense feels that they will be prejudiced by not having an opportunity to prepare for the evidence, a continuance must be requested, else the issue is waived; and third, if a continuance is requested, then the prosecution may proceed without the evidence or if they choose to insist on using the evidence, then the continuance must be granted. Ramos v. State, 710 So.2d 380, 384 (Miss.1998); Skaggs v. State, 676 So.2d 897, 903 (Miss.1996); Houston v. State, 531 So.2d 598, 611 (Miss.1988); Box v. State, *852 437 So.2d 19, 23-24 (Miss.1983) (Robertson, J., concurring).
¶ 12. In this case, the second recording came to the attention of the prosecution and the defense virtually at the same time. Robinson’s counsel moved for a mistrial. The trial court gave- Robinson’s- counsel an adequate opportunity to listen to the tape as well as the opportunity to recall Sue Bearup to impeach her on her statements made in the recording. The prosecution cannot disclose something of which they do not have knowledge. Once it was discovered that the statement existed, the trial court, though not explicitly in the record, complied with the mechanism for curing such problems as set forth in Box and its progeny. Furthermore, M.R.E. 103(a) provides that trial court error may not be based on the admission or exclusion of evidence unless a “substantial right of the party is affected...." We believe that Robinson has faded to demonstrate such a violation. This, coupled with the trial court’s adherence to the Box factors, makes Robinson’s assignment of error in this regard meritless. Accordingly, we overrule the same.
III. WHETHER THE PHOTO LINE-UP VIEWED BY THE VICTIMS WAS UNDULY SUGGESTIVE
¶ 13. Robinson’s third and final assignment of error alleges that the photographic array, the photo line-up, showed to the victims was unduly suggestive. The photo array was- prepared on the day of the robbery/burglary and contained six photographs, including one of Robbie Lewis and one of Robinson. Robinson contends that since he and Lewis were, of significantly different physical characteristics, that two separate photo line-ups should have been used. This argument is without merit.
¶ 14. The Mississippi Supreme Court has established that a photographic array containing pictures of the assailants) viewed by the victims is not unduly prejudicial unless the assailant’s photograph is notably different from the remaining photographs or the officer conducting the photo line-up makes some comment suggesting the identification of the assailant. Wilson v. State, 574 So.2d 1324, 1327 (Miss.1990) (quoting York v. State, 413 So.2d 1372, 1383 (Miss.1982)). Further, even if the pre-trial photo line-up was determined to be unduly suggestive, a later in-court identification is still perfectly admissible as long as, from the totality of the circumstances, the pre-trial identification was not so suggestive as to create a “very substantial likelihood of irreparable misidentification.” Wilson, 574 So.2d at 1327.
¶ 15. Based on our review of the record and the applicable precedents and the in-court identification of Robinson by the victims, we cannot say that the pre-trial identification of Robinson was such as to create a very substantial likelihood of irreparable misidentification. Accordingly, we overrule this assignment of error.
¶ 16. THE JUDGMENT OF THE CIRCUIT COURT OF WARREN COUNTY OF CONVICTION OF COUNTS I AND II OF ARMED ROBBERY WITH A DEADLY WEAPON AND SENTENCE OF TWENTY YEARS EACH, WITH FIVE YEARS EACH SUSPENDED; AND COUNT III OF CONVICTION OF BURGLARY OF A BUSINESS AND SENTENCE OF SEVEN YEARS, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. SENTENCES IN COUNTS I, II, AND III ARE TO RUN CONCURRENTLY. ALL COSTS OF THIS APPEAL ARE TAXED TO WARREN COUNTY.
BRIDGES, C.J., McMILLIN and THOMAS, P.JJ., and COLEMAN, DIAZ, HERRING, HINKEBEIN, KING and SOUTHWICK, JJ., concur.

. Robbie Lewis was indicted for this same offense and ultimately pled guilty to the charges against him.