KING, C.J.,
dissenting.
¶ 22. I dissent. With appropriate regard for the majority, I believe it errs in affirming Hicks’s conviction. As repugnant as the offense charged in this case may be, as an appellate court, it is our responsibility to resolve the issues presented to us consistent with the applicable law.
¶ 23. Hicks and his mother, Villa Hicks, agree that on October 28, 2005, Hicks had been back at home living with his mother for a week since returning from jail. That morning, Hicks awoke after his mother. He came out of his room and began ironing a suit. Meanwhile, Villa, Hicks’s seventy-two-year-old mother, was sitting in her recliner drinking her morning coffee. A discussion began regarding who actually owned the suit. Villa stated it was one of her grandchildren’s suits, while Hicks alleged that he had bought it from the grandchild.
¶ 24. At this point, Hicks and Villa testified to different versions of the events. Villa testified that the discussion turned to whether Hicks was going to help pay bills. When Hicks finished ironing, he began to fold up the ironing board. After he had folded the ironing board, Hicks then began to beat her with the ironing board for no reason. She testified that he hit her three to four times while she was sitting in her chair and then three to four more times after she fell to the floor. Villa testified that while on the floor, she asked Hicks to call 911; instead, he left her for dead. After he left, she attempted to call 911 from her phone, but it would not work. She tried to clean some of the blood off of her, and then she went to a neighbor’s house to call the police. After help arrived, she was taken to the hospital for treatment of her wounds.
¶ 25. Hicks testified to a different version of events. He testified that the disagreement over the suit caused his mother to come at him with a steak knife. He testified that he hit his mother with the *1105 ironing board only in self-defense while trying to fend off the knife attack.
¶ 26. Both parties testified that they received injuries from the altercation that morning. However, Villa’s injuries were much more severe requiring several stitches to close some of the wounds she received. In addition, she suffered damage to one eye, which caused her to lose sight in that eye. Hicks had injuries to his hands and leg. He testified that he received those injuries when Villa tried to cut him with a steak knife.
¶ 27. At trial, only four witnesses were called to testify, three by the State and one by the defense. Villa, her neighbor, and Officer J.G. Kufel testified for the State. Hicks was the only witness who testified for the defense. The neighbor’s testimony was merely that Villa came to her house that morning after having received substantial injuries, especially to her head.
¶ 28. The only issue in this case centers around the testimony of Officer Kufel, the officer who responded to Villa’s call. He took pictures of the scene of the altercation, as well as the injuries to Hicks and Villa. While on the stand he testified, that from his experience, he expected that wounds, which one would likely receive from defending against a knife attack, would have been more severe than the ones which Hicks received.
¶ 29. The troublesome testimony is found in the following exchange during the State’s direct examination of Officer Kufel:
Q. Okay. Now, with 18 years of law enforcement experience, someone that got the injuries that are associated with photograph [p]age 4, 5, and 6, would that — would [pjhotographs 9 and 10, the photos depicted there, would that correlate to defensive wounds to a struggle that is depicted in 4, 5, and 6?
BY DEFENSE COUNSEL: Judge, we are going to object to the definition of what she is calling defensive wounds in relation — I don’t think that is a clear question. I didn’t understand it, anyway.
BY THE COURT: Sustained. I don’t know if he is going to be — I think it probably would require expert testimony.
Q. Can you compare the wounds from [e]xhibits 9 and 10 as compared to the wounds that were inflicted on [pjhoto-graph [pjages 4, 5, and 6?
A. The wounds on 5 and 6—
BY DEFENSE COUNSEL: Object as to compare. What is her question? Can you compare them? What is the question?
Q. Severity, Your Honor. I mean, these are photographs, but he was actually there to see the wounds. I think his — although the photographs are good evidence, he was actually there to actually see the wounds on the person, and I want him to compare the severity of the injuries to [Villa] as compared to [Hicks].
BY DEFENSE COUNSEL: To which gets back to the question of severity, and he is not qualified.
BY THE COURT: I am not sure I understand the question. Rephrase your question.
[[Image here]]
Q. Would you expect to see the type of injuries that are depicted on pages 9 and 10, or would you expect to see injuries that are much worse than that, with a knife — if you are defending yourself in a knife altercation?
BY DEFENSE COUNSEL: Renew my objection.
BY THE COURT: Overruled. I will let him answer that question, if he can.
*1106 A. If I understand it correct [sic], the [Hicks’s injuries] appear to be very minor injuries compared to [Villa’s injuries] which are a lot more severe-type injuries.
Q. All right. But let me ask you this: If someone was defending themselves in a knife fight from someone with a knife, defending themselves, would you expect to see the kinds of wounds that are associated with the pictures [of Hicks’s wounds] or something worse than that?
BY DEFENSE COUNSEL: Same objection, Your Honor.
BY THE COURT: Overruled. I will let him answer. The photos speak for themselves. He will be subject to cross-examination.
A. If they were defending themselves from a knife wound, I would expect to see a lot more severe injury.
Q. Okay. And in 18 years, have you been associated with cases where people were defending themselves from knife attacks?
A. Yes, ma’am.
¶ 30. Hicks alleges that Officer Kufel’s opinion testimony in reference to the types of wounds that would be inflicted upon someone defending himself in a knife fight was expert testimony based upon Officer Kufel’s training and eighteen years of experience as a law enforcement officer. Therefore, Officer Kufel should have been classified as an expert witness and subjected to the appropriate foundational and discovery requirements. For support, Hicks cites to Ramos v. State, 710 So.2d 380 (Miss.1998).
¶ 31. In Ramos, a deputy testified as a lay witness as to the street value of marijuana, the method used by drug smugglers to transport marijuana, and that the marijuana found was fresh when it was opened. Id. at 387(1132). The supreme court found that since his testimony was based upon “some experience or expertise beyond that of the average, randomly selected adult, the opinion is [expert testimony] and not [lay testimony].” Id. at 388(¶ 37) (citing Couch v. City of D’Iberville, 656 So.2d 146, 153 (Miss.1995)). Therefore, the supreme court held that the deputy’s testimony should have been subject to the foundational requirements of Rule 702 of the Mississippi Rules of Evidence and the discovery requirements of Rule 4.06 of the Uniform Rules of Circuit Court. Id. at (¶1137-38).[1]
¶ 32. In this case, Officer Kufel was asked if the wounds Hicks received were the same kinds of wounds that an individual would receive while defending himself from being attacked with a knife. He responded, “If they were defending themselves from a knife wound, I would expect to see a lot more severe injury.” The State then asked, “And in 18 years, have you been associated with cases where people were defending themselves from knife attacks?” During the exchange about Hicks’s wounds, the State twice referenced Officer Kufel’s eighteen-year experience when discussing whether Hicks’s wounds appeared to be defensive from a knife altercation. Clearly, the State successfully sought expert opinion testimony from Officer Kufel as to the severity of Hicks’s wounds, as opposed to lay testimony based upon ordinary observation. Officer Kufel could have described the wounds received by Villa and Hicks since he actually viewed both sets of wounds, and perhaps provided some limited comparison. However, absent the proper foundation, he was not *1107 qualified under our rules to give an expert opinion based on his law enforcement experience as to whether the wounds Hicks received were defensive wounds from a knife altercation.
¶ 33. Therefore, his opinion crossed the line from permissive lay opinion into expert opinion, and the trial court should have sustained Hicks’s objection at the very least to the State’s question, “All right. But let me ask you this: If someone was defending themselves in a knife fight from someone with a knife, defending themselves, would you expect to see the kinds of wounds that are associated with the pictures [of Hicks’s wounds] or something worse than that?” In addition, it is unclear from the record whether Officer Kufel could have been qualified as an expert witness capable of testifying as to whether the wounds Hicks received were defensive wounds from a knife attack. All that is clear from the record is that in his eighteen years of law enforcement, Officer Kufel had seen the wounds of someone who had defended himself from a knife attack.
¶ 34. The next issue we must consider is whether the error is harmless. Rule 103(a) of the Mississippi Rules of Evidence requires that for error to be based on an evidentiary ruling, it must affect a substantial right of the offended party. “Few, if any, prosecutions have been perfect, and there can be errors ... which do not require reversal of a conviction.” Tran v. State, 962 So.2d 1237, 1246(¶ 36) (Miss.2007). Harmless errors are only those errors “which in the setting of a particular case are so unimportant and insignificant that they may ... be deemed harmless[.]” Id. at 1247(¶ 37). Here, we cannot say that the error was harmless, as it affected Hicks’s right to a fair trial.
¶ 35. This error cannot be classified as harmless due to the nature of the evidence in this case. Only three people offered testimony relevant to the incident that occurred between Villa and Hicks. They were Villa, Hicks, and Officer Kufel. The testimony of Villa and Hicks directly contradicted each other. Villa testified that she was attacked by Hicks without any provocation, while Hicks testified that he was merely defending himself from Villa’s knife attack. It appears that both Villa and Hicks received injuries from the incident, with Villa’s injuries being much more severe. Further, throughout the investigation and at trial, Hicks maintained that he was merely acting in self-defense from Villa’s knife attack. This case boils down to a “he said, she said” case with Officer Kufel’s testimony fully in support of Villa’s testimony. Therefore, the admission of Officer Kufel’s opinion as to whether Hicks received defensive wounds affected a substantial right of Hicks, the right to a fair trial.
¶ 36. Due to the limited testimony in this case, the error of admitting Officer Kufel’s opinion testimony as to whether these were defensive wounds was magnified at trial. I do not believe that this Court can say with confidence that the opinion of Officer Kufel did not affect the jury’s decision in this case. Therefore, the conviction should be reversed, and the case remanded for a new trial.
¶ 37. For the foregoing reasons, I dissent.
CHANDLER, J., JOINS THIS SEPARATE OPINION.

. Rule 4.06 of the Uniform Rules of Circuit Court is now Rule 9.04 of the Uniform Rules of Circuit and County Court.