KING, JUSTICE,
DISSENTING:
¶37. Because I believe that.the State essentially conducted a trial by ambush by failing to disclose Auge’s testimony about the.shape and location,of the tears, I respectfully dissent with the majority’s finding -on that issue.
1138. Pursuant'to Uniform Rule of Circuit and County Court Practice 9.04, “[t]he prosecution must disclose to each defendant or to defendant’s attorney ... any *1088 reports, statements, or opinions of experts, written, recorded or otherwise preserved, made in connection with the particular case and the substance of any oral statement made by any such expert .... ” URCCC 9.04(A)(4).[10] The purpose of Rule' 9.04 is to “avoid unfair surprise to either the state or defendant at trial.” Ramos v. State, 710 So.2d 380, 386 (Miss. 1998). “[W]e have held that the duty to make discovery extends to unwritten statements and reports as well.” West v. State, 553 So.2d 8, 17 (Miss. 1989). Therefore, pursuant to Rule 9.04, the prosecution must disclose any expert opinions and the substance of the opinion of any oral statement made by any such expert. I believe that the prosecution’s failure to disclose that its expert would testify about the v-shape of the tear, that the tear was an anterior tear, and that the tear had been partially internal was highly prejudicial to the defense.
¶ 39. First, the prosecution provided to the defense a statement that Auge’s testimony would include that the injuries sustained were consistent with the history presented. That statement was vague and gave no indication that Auge would testify as to the V-shape of one of the tears or of its implications. Auge’s ten-page medical report also did not contain any references concerning the shape of the anal tears or references to internal injuries or the implications thereof. Had the defense been informed of Auge’s opinions prior to trial, it would have had the opportunity to prepare an effective cross-examination and to present its own evidence in rebuttal.[11]
¶ 40, The prosecution’s failure to disclose Auge’s testimony and its allowing Auge to testify repeatedly on the undisclosed opinions caused a miscarriage of justice. Auge testified extensively about the shape and position of the tears:
• I noted four specific injuries. One was a tear at 12 o’clock, again' that was v-shaped ...
• The tears, the anal tears, there is— the major reason for an anal tear is actually a large hard stool that is passed .... Usually those—99 percent of those tears are posterior. They go toward the back side. So on the anus it would go toward the backside. Ninety-nine percent of all cases are of anal tears due to constipation is a posterior tear. You can have an anterior tear as well, but again 99 percent are posterior.
• [Posterior tears are] [b]ehind in the backside of the anus. That piece of tissue receives less vascular circulation. So that part is the one that generally tears as posterior.
*1089 • He had three anal tears. One was at 12 o’clock again based on the clock. That was a v-shape tear.
• The v-shape tear was wide toward the outer aspect of the anus and went in toward the inner aspect of the anus with traction and dilatation, w'hich is just the slightness of the anus. I was unable to see the end of the tear. So it went inside where the anus was dilated.
• As you can see this—if you’re not upclose and looking at it it’s difficult to see. But up here is the v-shape tear. It starts here and it goes here, and it goes into the anal vault.
• The v-shape tear is at 12 o’clock .... There is a large tear to the posterior area, which again for certain aspects you would expect that. An anterior tear is not necessarily something that I would expect.
• This right here with the blue dye it allows us to see injuries a lot clearer. And if you look right here this area here, it starts here and it is a v-shape tear that goes toward the rectum. Again even with dilatation I was unable to see the very end of that tear.
• Like—I don’t know—previously I’ve stated that just having a large bowel movement with a rectal tear generally in the posterior area adults come into the emergency room with that pain.
• Individually, individually each tear certainly could be caused, other than the v-shape tear, by a large stool coming out. Collectively, no, sir.
• Again the v-shape tear is just significant of an outside force going in toward the anus. So there would have to be a rational reason, and again that would come from your history as to why that particular tear was there.
• [Let me ask you. You’re saying that you got the outside—that you think that the v-shape indicates an outside force, right?] Absolutely.
¶ 41. Auge was the only expert witness called at trial and her testimony arguably was the most convincing evidence that the prosecution produced. Thus, her opinion that one of the tears was in a V-shape and that this particular shape indicated that there had been an outside force going into the anus, was extremely prejudicial to the defense. Out of the four counts with which Mouton had been charged, the jury convicted only on Count I—Sexual Battery: sexual penetration by inserting his finger into the anus of N.B. Auge’s testimony that the V-shaped tear indicated that something was going into the anus instead of a large stool going out of the anus directly was correlated with Count I. This, coupled with the jury’s initial deadlock in convicting Mouton, indicates that Auge’s testimony on the V-shaped tear and the posterior/anterior location of the tear was extremely prejudicial to the defense and important to the jury. As this Court has emphasized, “[j]ustice is better served when the accused knows ‘reasonably well in advance of trial what the prosecution will try to prove and how it will attempt to make its proof....’” Densmore v. State, 27 So.3d 379, 382 (Miss. 2009). Accordingly, I believe that the prosecution’s failure to notify the accused in advance of trial of the opinions of its expert was reversible error.
¶42. The clear language of Rule 9.04 states that any expert opinions must be disclosed. Mere disclosure of the location of anal tears does not fulfill the rule’s requirement to disclose any expert opinions. In a trial in which the defendant is accused of sexual battery, a blanket disclo *1090 sure that Auge would testify that the injuries were consistent with sexual abuse does not suffice. That in no way put Mouton on notice of Auge’s opinions about the shape of the anal tears or of her opinion that the particular shape indicated the tear was caused by an outside force. Mouton had prepared a defense that the tears had been caused by constipation. Had Auge’s opinion that the specific “V-shape” of the tear indicated it was caused by an outside force been disclosed, Mouton would have had an opportunity to amend his defense.
¶ 43. NJB.’s mother potentially had known of similar accusations against Mouton that, after an investigation, were found to be without evidence and were dropped. In her own statement to the police, she asserted that, “[ajfter I picked up my son [N.B.] and daughter [A.B.], [N.B.] start [sic] to complain about his butt. I asked him has anyone messed with him in his areas' ...N.B. was three years old at that time and Auge admitted that a child that young could hear someone ask questions about a situation and the child would think that it had happened to him even though it did not. At the time of trial, N.B. could not remember most of what, if anything, had happened that night. Thus, the opinion that N.B.’s anal tears could have been caused by constipation were it not for the V-shape became vitally important.
¶ 44. Moreover, Mouton’s attorney stated that he had interviewed Auge at great length and that he had asked her to “tell [him] everything that she found and why and the possibilities associated therewith.” Auge did not disclose her opinions about the shape of any of the tears, that the tears were anterior as opposed to posteri- or, or of her opinions on what she believed the shape and location of the tears indicated. Therefore, despite Mouton’s attorney having inquired, Auge either withheld or changed her opinions as to the shape, location, and meaning of the tears. In either scenario, Mouton lacked notice of Auge’s opinions at trial. Hence, I believe a new trial giving Mouton an opportunity to prepare an effective defense is the appropriate remedy for the discovery violation.
¶ 45.1 submit that the prosecution’s failure to disclose Auge’s opinions violated Rule 9.04, unfairly surprised the defense, and constituted a miscarriage of justice. Accordingly, I dissent and would reverse the judgment and remand for a new trial.
KITCHENS, J., JOINS THIS OPINION.

. Rule 9.04 formerly was Uniform Rule of Criminal Court Practice Rule 4.06.

. The majority asserts that the trial court had examined and found that the State's ex- . hibits had clearly shown "N.B.’s anus and the 'V-shaped' tear.” The majority misstates the trial court. During argument on the objection, the trial court asked Auge which photographs depicted the v-shaped tears. The trial court said, "With that then clearly depicted in the photographs so she can clearly testified it wasn’t in the opinion what the shape of it was....” The trial court went on to say, "I've already ruled on the v. It's in the photographs, it's there. You can call it whatever shape you want to. She can call it whatever shape she wants to. That’s a matter that the' jury will decide if a V, a W, an X, whatever it might look like to them.” The trial court did not state that the photographs clearly depicted a V-shape, only that the photographs depicted a tear and it was up to the jury to decide whether it looked like a V-shape to them. In addition, whether the photographs depict a V-shape ‘ is a secondary issue. The primary issue is that Auge was directly asked to disclose all opinions before trial. Auge clearly failed to disclose, or to even mention, any opinions at all on the shape of the tear and the implications thereof.