981 So.2d 308 (2007)
Keith Norcell YOUNG, Appellant
v.
STATE of Mississippi, Appellee.
No. 2005-KA-02036-COA.
Court of Appeals of Mississippi.
November 6, 2007.
Rehearing Denied February 19, 2008.
*310 George T. Holmes, Jackson, attorney for appellant.
Office of the Attorney General by Stephanie Breland Wood, attorney for appellee.
Before KING, C.J., CHANDLER and CARLTON, JJ.
CARLTON, J., for the Court.
¶ 1. Keith Norcell Young was convicted by a Washington County Circuit Court jury for the crime of capital murder with burglary as the underlying felony. Young was also convicted of first degree arson and third degree arson. He was sentenced as an habitual offender to serve life sentences without the possibility of parole for each crime. On appeal, he challenges the sufficiency of the evidence and the admission of opinion testimony. We find no error and affirm.

FACTS
¶ 2. Eighty-six-year-old Rosie Lee Davis lived alone in her home on Fairview Street in Greenville, Mississippi. She took pride in the appearance of her yard and hired Keith Young to help her with the yard work from time-to-time. At approximately 9:30 a.m. on Wednesday, October 29, 2003, the Greenville Fire Department received a call reporting a fire at Davis's house. Officer Chris Orr of the Greenville Police Department arrived at Davis's home moments before the firefighters. Officer Orr was unable to enter the home due to the fire but noticed that the front door was ajar. After the fire was extinguished, Davis's lifeless, charred body was found face down on her bed with a nylon stocking ligature knotted around her neck.
¶ 3. Detective Darrell Saxton of the Greenville police conducted an investigation of the scene shortly after the fire was extinguished. His investigation revealed a one-inch pry mark on the front door near the latch. Detective Saxton observed Davis's body and noticed a tan-colored stocking tied around her neck. He noted that she had an earring in one ear and a shoe on one foot. Officer Saxton found the matching earring and shoe in the kitchen and concluded that a struggle had taken place. Officer Saxton also noticed that a number of drawers were left pulled out, and that a television appeared to be missing from an entertainment center.[1] He also noticed that there was no car in the driveway. Around 1:00 p.m., Davis's green four-door car was found burning at a nearby abandoned mill. Officer Saxton then interviewed Young's sisters, Bridget Doss and Lasheka Doss. From their statements, Officer Saxton concluded that Young was a suspect. Later that evening, Young was spotted on the railroad tracks and was apprehended by Officer Orr and taken to the police station. A lighter was found on his person.
¶ 4. At trial, Bridget Doss testified that Young called her from Davis's house shortly before the fire on the morning of October 29. Phone records indicated that this *311 call took place at approximately 9:13 a.m. She testified that Young told her that he had strangled and killed Davis and planned to set the house on fire.[2] According to Bridget, Young asked her to pick him up from Davis's home. She testified that she drove by the house and noticed it was on fire but that Young was nowhere in sight. Bridget stated that Young later showed up at her apartment in a green car and stated that he was going to burn it as well. Bridget also testified that she saw a purse in Young's possession.
¶ 5. Lasheka Doss also testified at trial. She stated that she went to Bridget's apartment after the fire and that Young was at the apartment when she arrived. Young told her that he had just choked a woman to death. Lasheka testified that Young said that he had been using drugs early that morning and went to Davis's house to ask for money. Lasheka testified that Young left in a green car.
¶ 6. Roger McBride, a Greenville resident, also testified at trial. He stated that Young came by to see him in the early morning hours of October 29, specifically, around 4:00 a.m. He stated that Young was driving a green car and tried to sell him a television. McBride stated that he did not buy the television but that Young was able sell it to another man and that he and Young then used the proceeds of the sale to purchase crack cocaine, which they smoked. According to McBride, Young left and returned later trying to sell the tires off the car, then left again and came back trying to sell the car itself.
¶ 7. The State called Deputy Fire Marshall David Borgogni and offered him as an expert witness in fire investigation. However, the trial court found that he did not qualify as an expert. Accordingly, the trial judge allowed Borgogni to testify as a lay witness under Rule 701 of the Mississippi Rules of Evidence and explained to the jury that Borgogni would not be testifying as an expert. Borgogni testified that he was dispatched to Davis's house to investigate the fire and noticed that there were two separate fires, one in a front bedroom and one in a back bedroom. Borgogni testified that it was his opinion that the fires were "intentionally and mischievously set." He also stated that he classified the fire as an incendiary fire, which is an arson fire. As to the automobile fire, Borgogni testified over objection that in his opinion an accelerant was used and that he concluded that this fire was also an arson fire.
¶ 8. After a two-day trial, wherein the above mentioned evidence was presented, Young was convicted by a Washington County jury of capital murder, first degree arson and third degree arson. As to each count, Young was sentenced to life in the custody of the Mississippi Department of Corrections without the possibility of parole as an habitual offender. Young appeals.

DISCUSSION
1. Sufficiency of the Evidence
¶ 9. Young argues that the State presented legally insufficient evidence to convict him of capital murder. His argument under this assignment of error is two-fold: (1) that there was insufficient evidence to prove that a burglary occurred, and (2) that there was insufficient evidence to prove that Davis's death occurred during the commission of the burglary.
¶ 10. The trial court denied Young's motion for a directed verdict. We review the issue of whether the evidence *312 was legally sufficient by viewing the evidence in a light most favorable to the State. Shaw v. State, 915 So.2d 442, 448(¶ 24) (Miss.2005). Evidence is legally insufficient to convict a criminal defendant if a jury could not have found the accused guilty even with all the reasonable inferences in favor of guilt that could have been derived from the evidence. Id.
¶ 11. To establish that Young committed capital murder, the State was required to prove that Young killed Davis while "engaged in the commission of the crime of . . . burglary." Miss.Code Ann. § 97-3-19(2)(e) (Rev.2006). As the crime underlying the charge of capital murder was burglary, the State was required to establish an unlawful breaking and entering of a dwelling with the intent to commit a crime therein. Miss.Code Ann. § 97-17-23 (Rev. 2006).
¶ 12. Young argues that there was conflicting evidence as to whether a burglary occurred. He asserts that the only evidence to support a breaking and entering was the pry mark found on Davis's front door by Detective Saxton. Young points to testimony of Jerry Jordan, the assistant fire chief, who stated that he did not notice any signs of forced entry. Young argues further that, even if a breaking and entering is supported by sufficient evidence, there was insufficient evidence to prove that he did so with the intent to steal or kill.
¶ 13. It is well settled that where conflicting testimony is presented, "[t]he jury will be the sole judge of the credibility of the witnesses and the weight and worth of their testimony." Gathright v. State, 380 So.2d 1276, 1278 (Miss.1980). In the instant case, the jury believed Detective Saxton's testimony and was also presented with a picture of the pry mark. Evidence also established that the front door was left ajar, a television was missing and drawers were left open. As to intent, there was ample evidence that Young possessed several items of Davis's personal property shortly after the burglary. Young was seen in possession of Davis's car, television and purse. Furthermore, evidence adduced that Young went to Davis's house because he desired money to purchase drugs and testimony further established that Young sold the television and used the proceeds to purchase crack. Therefore, we find substantial evidence to support the jury's finding that Young burglarized Davis's home.
¶ 14. Young next contends that, because there is no concrete time associated with the burglary, there was insufficient evidence to prove that he murdered Davis during the commission of the burglary. The evidence presented at trial revealed that Young made and received phone calls through Monday, October 27, 2003. Young was seen in Davis's car trying to sell her television around 4:00 a.m. on Wednesday, October 29, 2003, the morning of the fire. In light of the foregoing, we find there is sufficient evidence to indicate that on or about October 29, 2003, Young broke into Davis's house, killed her, and stole some of her personal belongings. This issue is without merit.
2. Improper Expert Testimony
¶ 15. Young contends that the trial court erred by permitting Deputy Fire Marshall Borgogni to give improper expert testimony because he was not qualified as an expert witness in the area of fire investigation. Young argues that Borgogni's testimony concerning the origin of the fire, and whether the fire was intentionally set, crossed the boundary of lay witness opinion testimony admissible under Mississippi Rule of Evidence 701 and strayed into the realm of expert testimony admissible under *313 Rule 702 only after the witness has been properly qualified as an expert and tendered as such. Palmer v. Volkswagen of Am., Inc., 904 So.2d 1077, 1092-93 (¶¶ 61-66) (Miss.2005); Cotton v. State, 675 So.2d 308, 311-12 (Miss.1996); Goodson v. State, 566 So.2d 1142, 1153 (Miss.1990).
¶ 16. The State argues that any error in allowing Borgogni's testimony was harmless in light of Young's admission that he had set Davis's house on fire and his statement that he also intended to set her car on fire. Gray v. State, 799 So.2d 53, 61(¶ 30) (Miss.2001). To this end, the State asserts that the verdict of guilty on both counts of arson was supportable irrespective of Borgogni's testimony and thus not grounds for reversal. We agree.
¶ 17. We review the admission or exclusion of evidence under the abuse of discretion standard of review and will not reverse unless a substantial right of the defendant is adversely affected by the improperly admitted or excluded evidence. Floyd v. City of Crystal Springs, 749 So.2d 110, 113(¶ 12) (Miss.1999). "An error is harmless only when it is apparent on the face of the record that a fair minded jury could have arrived at no verdict other than that of guilty." Forrest v. State, 335 So.2d 900, 903 (Miss.1976). In Gray, our supreme court explained the difference between reversible and harmless error as follows:
To warrant reversal, two elements must be shown: error, and injury to the party appealing. Error is harmless when it is trivial, formal, or merely academic, and not prejudicial to the substantial rights of the party assigning it, and where it in no way affects the final outcome of the case; it is prejudicial, and ground for reversal, only when it affects the final result of the case and works adversely to a substantial right of the party assigning it. Obviously, in order for the rule of harmless error to be called into play in support of a judgment, the judgment must be otherwise supportable, and will be reversed when there is nothing in the pleadings or evidence to support it.
Gray, 799 So.2d at 61(¶ 30) (citing Catholic Diocese of Natchez-Jackson v. Jaquith, 224 So.2d 216, 221 (Miss.1969)).
¶ 18. Assuming for argument's sake that the trial court erred in permitting Borgogni's testimony, we find the error to be harmless. Young's conviction on both counts of arson are supported by the evidence regardless of Borgogni's testimony. Young was seen by numerous persons driving Davis's car and told his sister Bridget that he intended to burn it. He also told her that he intended to burn Davis's house minutes before the fire was discovered. Accordingly, we find that any error in admitting Borgogni's testimony as to his opinion that the fires were intentionally set was harmless. This issue is without merit.
¶ 19. THE JUDGMENT OF THE CIRCUIT COURT OF WASHINGTON COUNTY OF CONVICTION OF COUNT I, CAPITAL MURDER AND SENTENCE OF LIFE; COUNT II, FIRST DEGREE ARSON AND SENTENCE OF LIFE; COUNT III, THIRD DEGREE ARSON AND SENTENCE OF LIFE AS AN HABITUAL OFFENDER, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO WASHINGTON COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR.
NOTES
[1] Officer Saxton stated that he noticed dust on the entertainment center around the outline of the area over which the television rested.
[2] Bridget also gave a statement to police in which she stated that Young told her that he killed Davis on the Saturday or Sunday before the fire.