6 So.3d 1099 (2008)
Stacy HICKS, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2007-KA-00696-COA.
Court of Appeals of Mississippi.
August 12, 2008.
Rehearing Denied January 13, 2009.
Certiorari Denied April 16, 2009.
Leslie S. Lee, Jackson, Brenda Jackson Patterson, Earl P. Jordan, attorneys for appellant.
Office of the Attorney General by W. Glenn Watts, attorney for appellee.
EN BANC.
*1100 CARLTON, J., for the Court.
¶ 1. On February 26, 2007, Stacy Hicks (Hicks) was convicted of aggravated domestic violence. He was sentenced as a habitual offender to life imprisonment in the custody of the Mississippi Department of Corrections. Hicks now appeals his conviction and sentence, arguing that the trial court erred by allowing improper opinion testimony from a lay witness. Finding no error, we affirm Hicks's conviction and sentence.

FACTS
¶ 2. On October 28, 2005, Hicks was living with his seventy-two-year-old mother, Villa Hicks (Villa), after serving time in jail. Hicks had an appointment that morning with his dentist. To prepare for his appointment, Hicks began ironing a suit in the living area of the home. Hicks's mother was close by in her recliner, drinking her morning coffee. Villa and Hicks had an argument about the suit Hicks planned to wear to the appointment. Villa believed the suit belonged to one of her grandchildren, while Hicks claimed to have purchased the suit from that grandchild.
¶ 3. The discussion then turned to the subject of paying bills. Hicks, apparently angered by the discussion, folded up the ironing board, and then began to beat his mother with it. Villa testified that Hicks hit her three or four times while she was still sitting in her chair and then three or four more times after she fell to the floor.
¶ 4. Villa testified that she asked Hicks to call 911 to get medical help for her, but he refused. Hicks left his mother on the floor, went back to his bedroom to put his suit on, and then left the house on foot. Villa tried to call 911 for herself, but her phone would not work. She was able to walk to a neighbor's house to call for help. Once help arrived, Villa was transported to the hospital for the treatment of her injuries. Villa's injuries required several stitches, and she was hospitalized for two days. Further, one of her eyes was so badly injured that she no longer has sight in it. Villa's wounds were photographed, and the scene of the assault was also photographed.
¶ 5. Hicks was arrested and charged with aggravated domestic violence or, alternatively, the lesser crime of simple assault; he was also charged as a habitual offender. Hicks claimed that he acted in self-defense, responding to his mother's threats of violence with a steak knife. During questioning by police, Hicks indicated that he had injuries from the altercation, and the officer photographed those injuries.
¶ 6. At trial, the State called three witnesses: (1) Villa; (2) Ann Follins, the neighbor who helped Villa call the police; and (3) Officer J.G. Kufel. Officer Kufel is the investigator who photographed the crime scene and the wounds on Villa and Hicks. Hicks testified in his own defense and was the only witness for the defense.

DISCUSSION
¶ 7. Hicks raises only one issue for our review on appeal. He contends that the trial court erred in allowing into evidence portions of Officer Kufel's testimony which refuted his claim of self-defense. Hicks argues that because Officer Kufel's opinion testimony was based on his years of experience as a law enforcement officer, it should have been excluded because Officer Kufel had not been qualified as an expert witness.
¶ 8. The State contends that the issue is procedurally barred due to Hicks's failure to raise an objection to the testimony at trial or in his motion for a new trial. The State cites to Spicer v. State, 921 So.2d 292, 305(¶ 22) (Miss.2006) for the *1101 proposition that raising a specific objection as to one or more specific grounds before the trial court waives all other grounds for objection. Hicks's objection, the State argues, was insufficient because it did not specifically refer to Rule 702 of the Mississippi Rules of Evidence.
¶ 9. The problematic portion of Officer Kufel's testimony occurred during direct examination by the State. That portion of Officer Kufel's testimony is as follows:
Q. Okay. And you photographed those because [Hicks] pointed them out to you? Did he point those out to you?
A. Actually, when he told me that [Villa] had attacked him, then I wanted to see if [Hicks] had any injuries on him, and we asked [Hicks] at the jail about any injuries he had. And at that time, I told him I wanted to photograph them, and he allowed us to photograph them.
Q. Okay. Now, with 18 years of law enforcement experience, someone that got the injuries that are associated with photograph [p]age 4, 5, and 6, would that  would [p]hotographs 9 and 10, the photos depicted there, would that corollate [sic] to defensive wounds to a struggle that is depicted in 4, 5, and 6?
BY DEFENSE COUNSEL: Judge, we are going to object to the definition of what she is calling defensive wounds in relation  I don't think that is a clear question. I didn't understand it, anyway.
BY THE COURT: Sustained. I don't know if he is going to be  I think it probably would require expert testimony.
Q. Can you compare the wounds from [e]xhibits 9 and 10 as compared to the wounds that were inflicted on [p]hotograph [p]ages 4, 5, and 6?
A. The wounds on 5 and 6 
BY DEFENSE COUNSEL: Object as to compare. What is her question? Can you compare them? What is the question?
BY THE STATE: Severity, Your Honor. I mean, these are photographs, but he was actually there to see the wounds. I think his  although the photographs are good evidence, he was actually there to see the wounds on the person, and I want him to compare the severity of the injuries to [Villa] as compared to [Hicks].
BY DEFENSE COUNSEL: To which gets back to the question of severity, and he is not qualified.
BY THE COURT: I am not sure I understand the question. Rephrase your question.
. . . .
Q: Would you expect to see the type of injuries that are depicted on [p]ages 9 and 10, or would you expect to see injuries that are much worse than that, with a knife  if you are defending yourself in a knife altercation?
BY DEFENSE COUNSEL: Renew my objection.
BY THE COURT: Overruled. I will let him answer that question, if he can.
A: If I understand it correct[ly], the injuries in 9 and 10 appear to be very minor injuries compared to the [e]xhibits 4, 5, and 6, which are a lot more severe-type injuries.
Q: All right. But let me ask you this: If someone was defending themselves in a knife fight from someone with a knife, defending themselves, would you expect to see the kinds of wounds that are associated with the pictures on [p]ages 9 and 10 or something worse than that?
BY DEFENSE COUNSEL: Same objection, Your Honor.

*1102 BY THE COURT: Overruled. I will let him answer. The photos speak for themselves. He will be subject to cross-examination.
A: If they were defending themselves from a knife wound, I would expect to see a lot more severe injury.
Q: Okay. And in 18 years, have you been associated with cases where people were defending themselves from knife attacks?
A: Yes, ma'am.
¶ 10. It is clear to this Court that Hicks's counsel raised the objection to Officer Kufel's testimony before the trial court. The trial judge sustained Hicks's first objection, stating, "I think it probably would require expert testimony." As the State continued to question Officer Kufel, Hicks continued to object, arguing, "which gets back to the question of severity, and he is not qualified." The trial court overruled Hicks's objections and allowed the testimony into evidence. We find the issue to be properly preserved for our review. We now must consider whether the trial court erred in allowing Officer Kufel's opinion testimony.
¶ 11. This Court has articulated its standard of review in cases where the admission of evidence is at issue. "We review the admission or exclusion of evidence under the abuse of discretion standard of review and will not reverse unless a substantial right of the defendant is adversely affected by the improperly admitted or excluded evidence." Young v. State, 981 So.2d 308, 313(¶ 17) (Miss.Ct.App.2007) (citing Floyd v. City of Crystal Springs, 749 So.2d 110, 113(¶ 12) (Miss.1999)).
¶ 12. Hicks argues that Officer Kufel's statements were based on his eighteen years of experience in law enforcement and criminal investigations. Because his testimony was based on his experience as a law enforcement professional, Hicks argues that Officer Kufel's testimony should have been considered expert opinion testimony and subjected to the foundational requirements of Rule 702 of the Mississippi Rules of Evidence, as well as discovery procedures of Rule 9.04(A)(4) of the Uniform Rules of Circuit and County Court.
¶ 13. Hicks cites Ramos v. State, 710 So.2d 380, (Miss.1998), in support of his argument that the testimony should have been excluded. In Ramos, a deputy sheriff testified against the defendant regarding the street value of marijuana, the typical methods used by drug smugglers to mask the smell of marijuana, and the freshness of the marijuana seized during the stop. Id. at 387(¶ 32). The supreme court in that case reversed the trial court, holding that the testimony was expert, not lay testimony. Id. at 388(¶ 38).
¶ 14. The case at bar is distinguishable from Ramos. The testimony provided by Deputy Bosarge in Ramos required more expertise than the testimony provided by Officer Kufel. In Ramos, the testimony went further than just the deputy's first-hand observations. Deputy Bosarge testified, based on his experience and training as a law enforcement officer. See Ramos, 710 So.2d at 387-88 (¶¶ 33-38). His statements went beyond a description of the items seized and ventured into expert opinion testimony based on his expertise and experience as a law enforcement officer. See id. at 388(¶ 38).
¶ 15. As the supreme court in Sample v. State, 643 So.2d 524, 529 (Miss.1994) noted, "[t]here is often a very thin line between fact and opinion." Further, the supreme court held:
There is a bright-line rule. That is, where, in order to express the opinion, the witness must possess some experience or expertise beyond that of the average, randomly selected adult, it is a *1103 Miss. R. Evid. 702 opinion and not a Rule 701 opinion.
Id. at 529-30 (citing Miss. State Highway Comm'n v. Gilich, 609 So.2d 367, 377 (Miss.1992)).
¶ 16. In the case at bar, the testimony at issue required only personal observation. No particular knowledge was necessary for Officer Kufel to compare the severity of Villa's injuries to the severity of Hicks's injuries. Officer Kufel did little more than describe the injuries that he observed first-hand shortly after the assault occurred. His descriptions of the wounds and their relative severity were factual descriptions and fall within Mississippi Rule of Evidence 701. However, to the extent that Officer Kufel blurred the line between fact and opinion testimony with regard to his testimony that he would expect Hicks to have more severe injuries if he had been defending himself against a knife attack, we find any error to be harmless in light of the overwhelming weight of the evidence of his guilt.
¶ 17. "An error is harmless only when it is apparent on the face of the record that a fair-minded jury could have arrived at no verdict other than that of guilty." Young, 981 So.2d at 313(¶ 17) (quoting Forrest v. State, 335 So.2d 900, 903 (Miss.1976)). The Mississippi Supreme Court has further explained our standard regarding harmless error, stating:
To warrant reversal, two elements must be shown: error, and injury to the party appealing. Error is harmless when it is trivial, formal, or merely academic, and not prejudicial to the substantial rights of the party assigning it, and where it in no way affects the final outcome of the case; it is prejudicial, and ground for reversal, only when it affects the final result of the case and works adversely to a substantial right of the party assigning it. Obviously, in order for the rule of harmless error to be called into play in support of a judgment, the judgment must be otherwise supportable, and will be reversed when there is nothing in the pleadings or evidence to support it.
Gray v. State, 799 So.2d 53, 61(¶ 30) (Miss. 2001) (quoting Catholic Diocese of Natchez-Jackson v. Jaquith, 224 So.2d 216, 221 (Miss.1969)).
¶ 18. We find the evidence in the record so overwhelming as to convince us that a fair-minded jury could have arrived at no other verdict than guilty. The photographs that Officer Kufel identified as being accurate recordings of the crime scene, the ironing board, and the injuries to the victim and to the defendant clearly support the verdict. The photograph of the ironing board, which Hicks used to beat his mother, shows that the ironing board was crumpled at the ends and had a significant amount of blood on it after the attack. Villa testified at trial that the blood on the ironing board was hers. The photograph of Villa's nightgown, which she was wearing at the time of the attack, shows significant amounts of blood. Follins, Villa's neighbor, testified at trial that the gown was so soaked with blood that it was clinging to Villa's body. Photographs of Villa at the hospital show that she had significant injuries.
¶ 19. The photographs of Hicks's injuries, however, show that he had only minor scratches following the attack on his mother. The evidence at trial contradicts his testimony that he acted in self-defense. Hicks testified that he did not hit his mother with the ironing board; rather, he had only tried to push her away with it. Hicks testified that when he left his mother in the house after the attack, she just had "a few nicks" on her. The photographs and testimony contradict both of *1104 those claims. Further, Officer Kufel testified that when he went to the crime scene to photograph it and to gather evidence, he did not find a steak knife.
¶ 20. An officer is allowed to describe his first-hand observations of injuries. See Seal v. Miller, 605 So.2d 240, 244 (Miss.1992) (holding that testimony from an officer that she did not perceive any evidence to indicate that a car had spun before hitting a pole did not require any special expertise or skill. It was enough that the witness had first-hand knowledge of what was present at the scene). However, officers may not give expert testimony without first being qualified under Mississippi Rule of Evidence 702. To the extent that Officer Kufel's testimony regarding the defensive nature of Hicks's wounds constituted expert testimony, we find any such error to be harmless. Therefore, we affirm Hicks's conviction and sentence.
¶ 21. THE JUDGMENT OF THE CLARKE COUNTY CIRCUIT COURT OF CONVICTION OF AGGRAVATED DOMESTIC VIOLENCE AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AS A HABITUAL OFFENDER, WITHOUT ELIGIBILITY FOR PAROLE OR PROBATION, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO CLARKE COUNTY.
LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR. KING, C.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY CHANDLER, J. ROBERTS, J., NOT PARTICIPATING.
KING, C.J., dissenting.
¶ 22. I dissent. With appropriate regard for the majority, I believe it errs in affirming Hicks's conviction. As repugnant as the offense charged in this case may be, as an appellate court, it is our responsibility to resolve the issues presented to us consistent with the applicable law.
¶ 23. Hicks and his mother, Villa Hicks, agree that on October 28, 2005, Hicks had been back at home living with his mother for a week since returning from jail. That morning, Hicks awoke after his mother. He came out of his room and began ironing a suit. Meanwhile, Villa, Hicks's seventy-two-year-old mother, was sitting in her recliner drinking her morning coffee. A discussion began regarding who actually owned the suit. Villa stated it was one of her grandchildren's suits, while Hicks alleged that he had bought it from the grandchild.
¶ 24. At this point, Hicks and Villa testified to different versions of the events. Villa testified that the discussion turned to whether Hicks was going to help pay bills. When Hicks finished ironing, he began to fold up the ironing board. After he had folded the ironing board, Hicks then began to beat her with the ironing board for no reason. She testified that he hit her three to four times while she was sitting in her chair and then three to four more times after she fell to the floor. Villa testified that while on the floor, she asked Hicks to call 911; instead, he left her for dead. After he left, she attempted to call 911 from her phone, but it would not work. She tried to clean some of the blood off of her, and then she went to a neighbor's house to call the police. After help arrived, she was taken to the hospital for treatment of her wounds.
¶ 25. Hicks testified to a different version of events. He testified that the disagreement over the suit caused his mother to come at him with a steak knife. He testified that he hit his mother with the *1105 ironing board only in self-defense while trying to fend off the knife attack.
¶ 26. Both parties testified that they received injuries from the altercation that morning. However, Villa's injuries were much more severe requiring several stitches to close some of the wounds she received. In addition, she suffered damage to one eye, which caused her to lose sight in that eye. Hicks had injuries to his hands and leg. He testified that he received those injuries when Villa tried to cut him with a steak knife.
¶ 27. At trial, only four witnesses were called to testify, three by the State and one by the defense. Villa, her neighbor, and Officer J.G. Kufel testified for the State. Hicks was the only witness who testified for the defense. The neighbor's testimony was merely that Villa came to her house that morning after having received substantial injuries, especially to her head.
¶ 28. The only issue in this case centers around the testimony of Officer Kufel, the officer who responded to Villa's call. He took pictures of the scene of the altercation, as well as the injuries to Hicks and Villa. While on the stand he testified, that from his experience, he expected that wounds, which one would likely receive from defending against a knife attack, would have been more severe than the ones which Hicks received.
¶ 29. The troublesome testimony is found in the following exchange during the State's direct examination of Officer Kufel:
Q. Okay. Now, with 18 years of law enforcement experience, someone that got the injuries that are associated with photograph [p]age 4, 5, and 6, would that  would [p]hotographs 9 and 10, the photos depicted there, would that correlate to defensive wounds to a struggle that is depicted in 4, 5, and 6?
BY DEFENSE COUNSEL: Judge, we are going to object to the definition of what she is calling defensive wounds in relation  I don't think that is a clear question. I didn't understand it, anyway.
BY THE COURT: Sustained. I don't know if he is going to be  I think it probably would require expert testimony.
Q. Can you compare the wounds from [e]xhibits 9 and 10 as compared to the wounds that were inflicted on [p]hotograph [p]ages 4, 5, and 6?
A. The wounds on 5 and 6 
BY DEFENSE COUNSEL: Object as to compare. What is her question? Can you compare them? What is the question?
Q. Severity, Your Honor. I mean, these are photographs, but he was actually there to see the wounds. I think his  although the photographs are good evidence, he was actually there to actually see the wounds on the person, and I want him to compare the severity of the injuries to [Villa] as compared to [Hicks].
BY DEFENSE COUNSEL: To which gets back to the question of severity, and he is not qualified.
BY THE COURT: I am not sure I understand the question. Rephrase your question.
. . . .
Q. Would you expect to see the type of injuries that are depicted on pages 9 and 10, or would you expect to see injuries that are much worse than that, with a knife  if you are defending yourself in a knife altercation?
BY DEFENSE COUNSEL: Renew my objection.
BY THE COURT: Overruled. I will let him answer that question, if he can.

*1106 A. If I understand it correct [sic], the [Hicks's injuries] appear to be very minor injuries compared to [Villa's injuries] which are a lot more severe-type injuries.
Q. All right. But let me ask you this: If someone was defending themselves in a knife fight from someone with a knife, defending themselves, would you expect to see the kinds of wounds that are associated with the pictures [of Hicks's wounds] or something worse than that?
BY DEFENSE COUNSEL: Same objection, Your Honor.
BY THE COURT: Overruled. I will let him answer. The photos speak for themselves. He will be subject to cross-examination.
A. If they were defending themselves from a knife wound, I would expect to see a lot more severe injury.
Q. Okay. And in 18 years, have you been associated with cases where people were defending themselves from knife attacks?
A. Yes, ma'am.
¶ 30. Hicks alleges that Officer Kufel's opinion testimony in reference to the types of wounds that would be inflicted upon someone defending himself in a knife fight was expert testimony based upon Officer Kufel's training and eighteen years of experience as a law enforcement officer. Therefore, Officer Kufel should have been classified as an expert witness and subjected to the appropriate foundational and discovery requirements. For support, Hicks cites to Ramos v. State, 710 So.2d 380 (Miss.1998).
¶ 31. In Ramos, a deputy testified as a lay witness as to the street value of marijuana, the method used by drug smugglers to transport marijuana, and that the marijuana found was fresh when it was opened. Id. at 387(¶ 32). The supreme court found that since his testimony was based upon "some experience or expertise beyond that of the average, randomly selected adult, the opinion is [expert testimony] and not [lay testimony]." Id. at 388(¶ 37) (citing Couch v. City of D'Iberville, 656 So.2d 146, 153 (Miss.1995)). Therefore, the supreme court held that the deputy's testimony should have been subject to the foundational requirements of Rule 702 of the Mississippi Rules of Evidence and the discovery requirements of Rule 4.06 of the Uniform Rules of Circuit Court. Id. at (¶¶ 37-38).[1]
¶ 32. In this case, Officer Kufel was asked if the wounds Hicks received were the same kinds of wounds that an individual would receive while defending himself from being attacked with a knife. He responded, "If they were defending themselves from a knife wound, I would expect to see a lot more severe injury." The State then asked, "And in 18 years, have you been associated with cases where people were defending themselves from knife attacks?" During the exchange about Hicks's wounds, the State twice referenced Officer Kufel's eighteen-year experience when discussing whether Hicks's wounds appeared to be defensive from a knife altercation. Clearly, the State successfully sought expert opinion testimony from Officer Kufel as to the severity of Hicks's wounds, as opposed to lay testimony based upon ordinary observation. Officer Kufel could have described the wounds received by Villa and Hicks since he actually viewed both sets of wounds, and perhaps provided some limited comparison. However, absent the proper foundation, he was not *1107 qualified under our rules to give an expert opinion based on his law enforcement experience as to whether the wounds Hicks received were defensive wounds from a knife altercation.
¶ 33. Therefore, his opinion crossed the line from permissive lay opinion into expert opinion, and the trial court should have sustained Hicks's objection at the very least to the State's question, "All right. But let me ask you this: If someone was defending themselves in a knife fight from someone with a knife, defending themselves, would you expect to see the kinds of wounds that are associated with the pictures [of Hicks's wounds] or something worse than that?" In addition, it is unclear from the record whether Officer Kufel could have been qualified as an expert witness capable of testifying as to whether the wounds Hicks received were defensive wounds from a knife attack. All that is clear from the record is that in his eighteen years of law enforcement, Officer Kufel had seen the wounds of someone who had defended himself from a knife attack.
¶ 34. The next issue we must consider is whether the error is harmless. Rule 103(a) of the Mississippi Rules of Evidence requires that for error to be based on an evidentiary ruling, it must affect a substantial right of the offended party. "Few, if any, prosecutions have been perfect, and there can be errors ... which do not require reversal of a conviction." Tran v. State, 962 So.2d 1237, 1246(¶ 36) (Miss. 2007). Harmless errors are only those errors "which in the setting of a particular case are so unimportant and insignificant that they may ... be deemed harmless[.]" Id. at 1247(¶ 37). Here, we cannot say that the error was harmless, as it affected Hicks's right to a fair trial.
¶ 35. This error cannot be classified as harmless due to the nature of the evidence in this case. Only three people offered testimony relevant to the incident that occurred between Villa and Hicks. They were Villa, Hicks, and Officer Kufel. The testimony of Villa and Hicks directly contradicted each other. Villa testified that she was attacked by Hicks without any provocation, while Hicks testified that he was merely defending himself from Villa's knife attack. It appears that both Villa and Hicks received injuries from the incident, with Villa's injuries being much more severe. Further, throughout the investigation and at trial, Hicks maintained that he was merely acting in self-defense from Villa's knife attack. This case boils down to a "he said, she said" case with Officer Kufel's testimony fully in support of Villa's testimony. Therefore, the admission of Officer Kufel's opinion as to whether Hicks received defensive wounds affected a substantial right of Hicks, the right to a fair trial.
¶ 36. Due to the limited testimony in this case, the error of admitting Officer Kufel's opinion testimony as to whether these were defensive wounds was magnified at trial. I do not believe that this Court can say with confidence that the opinion of Officer Kufel did not affect the jury's decision in this case. Therefore, the conviction should be reversed, and the case remanded for a new trial.
¶ 37. For the foregoing reasons, I dissent.
CHANDLER, J., JOINS THIS SEPARATE OPINION.
NOTES
[1] Rule 4.06 of the Uniform Rules of Circuit Court is now Rule 9.04 of the Uniform Rules of Circuit and County Court.