*1100 CARLTON, J.,
for the Court.
¶ 1. On February 26, 2007, Stacy Hicks (Hicks) was convicted of aggravated domestic violence. He was sentenced as a habitual offender to life imprisonment in the custody of the Mississippi Department of Corrections. Hicks now appeals his conviction and sentence, arguing that the trial court erred by allowing improper opinion testimony from a lay witness. Finding no error, we affirm Hicks’s conviction and sentence.
FACTS
¶ 2. On October 28, 2005, Hicks was living with his seventy-two-year-old mother, Villa Hicks (Villa), after serving time in jail. Hicks had an appointment that morning with his dentist. To prepare for his appointment, Hicks began ironing a suit in the living area of the home. Hicks’s mother was close by in her recliner, drinking her morning coffee. Villa and Hicks had an argument about the suit Hicks planned to wear to the appointment. Villa believed the suit belonged to one of her grandchildren, while Hicks claimed to have purchased the suit from that grandchild.
¶ 3. The discussion then turned to the subject of paying bills. Hicks, apparently angered by the discussion, folded up the ironing board, and then began to beat his mother with it. Villa testified that Hicks hit her three or four times while she was still sitting in her chair and then three or four more times after she fell to the floor.
¶ 4. Villa testified that she asked Hicks to call 911 to get medical help for her, but he refused. Hicks left his mother on the floor, went back to his bedroom to put his suit on, and then left the house on foot. Villa tried to call 911 for herself, but her phone would not work. She was able to walk to a neighbor’s house to call for help. Once help arrived, Villa was transported to the hospital for the treatment of her injuries. Villa’s injuries required several stitches, and she was hospitalized for two days. Further, one of her eyes was so badly injured that she no longer has sight in it. Villa’s wounds were photographed, and the scene of the assault was also photographed.
¶ 5. Hicks was arrested and charged with aggravated domestic violence or, alternatively, the lesser crime of simple assault; he was also charged as a habitual offender. Hicks claimed that he acted in self-defense, responding to his mother’s threats of violence with a steak knife. During questioning by police, Hicks indicated that he had injuries from the altercation, and the officer photographed those injuries.
¶ 6. At trial, the State called three witnesses: (1) Villa; (2) Ann Follins, the neighbor who helped Villa call the police; and (3) Officer J.G. Kufel. Officer Kufel is the investigator who photographed the crime scene and the wounds on Villa and Hicks. Hicks testified in his own defense and was the only witness for the defense.
DISCUSSION
¶ 7. Hicks raises only one issue for our review on appeal. He contends that the trial court erred in allowing into evidence portions of Officer Kufel’s testimony which refuted his claim of self-defense. Hicks argues that because Officer Kufel’s opinion testimony was based on his years of experience as a law enforcement officer, it should have been excluded because Officer Kufel had not been qualified as an expert witness.
¶8. The State contends that the issue is procedurally barred due to Hicks’s failure to raise an objection to the testimony at trial or in his motion for a new trial. The State cites to Spicer v. State, 921 So.2d 292, 305(¶ 22) (Miss.2006) for the *1101 proposition that raising a specific objection as to one or more specific grounds before the trial court waives all other grounds for objection. Hicks’s objection, the State argues, was insufficient because it did not specifically refer to Rule 702 of the Mississippi Rules of Evidence.
¶ 9. The problematic portion of Officer Kufel’s testimony occurred during direct examination by the State. That portion of Officer Kufel’s testimony is as follows:
Q. Okay. And you photographed those because [Hicks] pointed them out to you? Did he point those out to you?
A. Actually, when he told me that [Villa] had attacked him, then I wanted to see if [Hicks] had any injuries on him, and we asked [Hicks] at the jail about any injuries he had. And at that time, I told him I wanted to photograph them, and he allowed us to photograph them.
Q. Okay. Now, with 18 years of law enforcement experience, someone that got the injuries that are associated with photograph [p]age 4, 5, and 6, would that — would [p]hotographs 9 and 10, the photos depicted there, would that corol-late [sic] to defensive wounds to a struggle that is depicted in 4, 5, and 6?
BY DEFENSE COUNSEL: Judge, we are going to object to the definition of what she is calling defensive wounds in relation — I don’t think that is a clear question. I didn’t understand it, anyway.
BY THE COURT: Sustained. I don’t know if he is going to be — I think it probably would require expert testimony-
Q. Can you compare the wounds from [e]xhibits 9 and 10 as compared to the wounds that were inflicted on [p]hoto-graph [p]ages 4, 5, and 6?
A. The wounds on 5 and 6—
BY DEFENSE COUNSEL: Object as to compare. What is her question? Can you compare them? What is the question?
BY THE STATE: Severity, Your Hon- or. I mean, these are photographs, but he was actually there to see the wounds. I think his — although the photographs are good evidence, he was actually there to see the wounds on the person, and I want him to compare the severity of the injuries to [Villa] as compared to [Hicks].
BY DEFENSE COUNSEL: To which gets back to the question of severity, and he is not qualified.
BY THE COURT: I am not sure I understand the question. Rephrase your question.
Q: Would you expect to see the type of injuries that are depicted on [p]ages 9 and 10, or would you expect to see injuries that are much worse than that, with a knife — if you are defending yourself in a knife altercation?
BY DEFENSE COUNSEL: Renew my objection.
BY THE COURT: Overruled. I will let him answer that question, if he can.
A: If I understand it correct[ly], the injuries in 9 and 10 appear to be very minor injuries compared to the [e]xhibits 4, 5, and 6, which are a lot more severe-type injuries.
Q: All right. But let me ask you this: If someone was defending themselves in a knife fight from someone with a knife, defending themselves, would you expect to see the kinds of wounds that are associated with the pictures on [p]ages 9 and 10 or something worse than that?
BY DEFENSE COUNSEL: Same objection, Your Honor.
*1102 BY THE COURT: Overruled. I will let him answer. The photos speak for themselves. He will be subject to cross-examination.
A: If they were defending themselves from a knife wound, I would expect to see a lot more severe injury.
Q: Okay. And in 18 years, have you been associated with cases where people were defending themselves from knife attacks?
A: Yes, ma’am.
¶ 10. It is clear to this Court that Hicks’s counsel raised the objection to Officer Kufel’s testimony before the trial court. The trial judge sustained Hicks’s first objection, stating, “I think it probably would require expert testimony.” As the State continued to question Officer Kufel, Hicks continued to object, arguing, “which gets back to the question of severity, and he is not qualified.” The trial court overruled Hicks’s objections and allowed the testimony into evidence. We find the issue to be properly preserved for our review. We now must consider whether the trial court erred in allowing Officer Kufel’s opinion testimony.
¶ 11. This Court has articulated its standard of review in cases where the admission of evidence is at issue. “We review the admission or exclusion of evidence under the abuse of discretion standard of review and will not reverse unless a substantial right of the defendant is adversely affected by the improperly admitted or excluded evidence.” Young v. State, 981 So.2d 308, 313(¶ 17) (Miss.Ct.App.2007) (citing Floyd v. City of Crystal Springs, 749 So.2d 110, 113(¶ 12) (Miss.1999)).
¶ 12. Hicks argues that Officer Kufel’s statements were based on his eighteen years of experience in law enforcement and criminal investigations. Because his testimony was based on his experience as a law enforcement professional, Hicks ai'-gues that Officer Kufel’s testimony should have been considered expert opinion testimony and subjected to the foundational requirements of Rule 702 of the Mississippi Rules of Evidence, as well as discovery procedures of Rule 9.04(A)(4) of the Uniform Rules of Circuit and County Court.
¶ 13. Hicks cites Ramos v. State, 710 So.2d 380, (Miss.1998), in support of his argument that the testimony should have been excluded. In Ramos, a deputy sheriff testified against the defendant regarding the street value of marijuana, the typical methods used by drug smugglers to mask the smell of marijuana, and the freshness of the marijuana seized during the stop. Id. at 387(¶ 32). The supreme court in that case reversed the trial court, holding that the testimony was expert, not lay testimony. Id. at 388(¶ 38).
¶ 14. The case at bar is distinguishable from Ramos. The testimony provided by Deputy Bosarge in Ramos required more expertise than the testimony provided by Officer Kufel. In Ramos, the testimony went further than just the deputy’s firsthand observations. Deputy Bosarge testified, based on his experience and training as a law enforcement officer. See Ramos, 710 So.2d at 387-88 (¶¶ 33-38). His statements went beyond a description of the items seized and ventured into expert opinion testimony based on his expertise and experience as a law enforcement officer. See id. at 388(1138).
¶ 15. As the supreme court in Sample v. State, 643 So.2d 524, 529 (Miss.1994) noted, “[tjhere is often a very thin line between fact and opinion.” Further, the supreme court held:
There is a bright-line rule. That is, where, in order to express the opinion, the witness must possess some experience or expertise beyond that of the average, randomly selected adult, it is a *1103 Miss. R. Evid. 702 opinion and not a Rule 701 opinion.
Id. at 529-30 (citing Miss. State Highway Comm’n v. Gilich, 609 So.2d 367, 377 (Miss.1992)).
¶ 16. In the case at bar, the testimony at issue required only personal observation. No particular knowledge was necessary for Officer Kufel to compare the severity of Villa’s injuries to the severity of Hicks’s injuries. Officer Kufel did little more than describe the injuries that he observed first-hand shortly after the assault occurred. His descriptions of the wounds and their relative severity were factual descriptions and fall within Mississippi Rule of Evidence 701. However, to the extent that Officer Kufel blurred the line between fact and opinion testimony with regard to his testimony that he would expect Hicks to have more severe injuries if he had been defending himself against a knife attack, we find any error to be harmless in light of the overwhelming weight of the evidence of his guilt.
¶ 17. “An error is harmless only when it is apparent on the face of the record that a fair-minded jury could have arrived at no verdict other than that of guilty.” Young, 981 So.2d at 313(¶ 17) (quoting Forrest v. State, 335 So.2d 900, 903 (Miss.1976)). The Mississippi Supreme Court has further explained our standard regarding harmless error, stating:
To warrant reversal, two elements must be shown: error, and injury to the party appealing. Error is harmless when it is trivial, formal, or merely academic, and not prejudicial to the substantial rights of the party assigning it, and where it in no way affects the final outcome of the case; it is prejudicial, and ground for reversal, only when it affects the final result of the case and works adversely to a substantial right of the party assigning it. Obviously, in order for the rule of harmless error to be called into play in support of a judgment, the judgment must be otherwise supportable, and will be reversed when there is nothing in the pleadings or evidence to support it.
Gray v. State, 799 So.2d 53, 61(¶ 30) (Miss.2001) (quoting Catholic Diocese of Natchez-Jackson v. Jaquith, 224 So.2d 216, 221 (Miss.1969)).
¶ 18. We find the evidence in the record so overwhelming as to convince us that a fair-minded jury could have arrived at no other verdict than guilty. The photographs that Officer Kufel identified as being accurate recordings of the crime scene, the ironing board, and the injuries to the victim and to the defendant clearly support the verdict. The photograph of the ironing board, which Hicks used to beat his mother, shows that the ironing board was crumpled at the ends and had a significant amount of blood on it after the attack. Villa testified at trial that the blood on the ironing board was hers. The photograph of Villa’s nightgown, which she was wearing at the time of the attack, shows significant amounts of blood. Follins, Villa’s neighbor, testified at trial that the gown was so soaked with blood that it was clinging to Villa’s body. Photographs of Villa at the hospital show that she had significant injuries.
¶ 19. The photographs of Hicks’s injuries, however, show that he had only minor scratches following the attack on his mother. The evidence at trial contradicts his testimony that he acted in self-defense. Hicks testified that he did not hit his mother with the ironing board; rather, he had only tried to push her away with it. Hicks testified that when he left his mother in the house after the attack, she just had “a few nicks” on her. The photographs and testimony contradict both of *1104 those claims. Further, Officer Kufel testified that when he went to the crime scene to photograph it and to gather evidence, he did not find a steak knife.
¶20. An officer is allowed to describe his first-hand observations of injuries. See Seal v. Miller, 605 So.2d 240, 244 (Miss.1992) (holding that testimony from an officer that she did not perceive any evidence to indicate that a car had spun before hitting a pole did not require any special expertise or skill. It was enough that the witness had first-hand knowledge of what was present at the scene). However, officers may not give expert testimony without first being qualified under Mississippi Rule of Evidence 702. To the extent that Officer Kufel’s testimony regarding the defensive nature of Hicks’s wounds constituted expert testimony, we find any such error to be harmless. Therefore, we affirm Hicks’s conviction and sentence.
¶ 21. THE JUDGMENT OF THE CLARKE COUNTY CIRCUIT COURT OF CONVICTION OF AGGRAVATED DOMESTIC VIOLENCE AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AS A HABITUAL OFFENDER, WITHOUT ELIGIBILITY FOR PAROLE OR PROBATION, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO CLARKE COUNTY.
LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR. KING, C.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY CHANDLER, J. ROBERTS, J., NOT PARTICIPATING.