# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-KA-00534-COA

JAMES DAVON O'QUINN                                    APPELLANT

v.

STATE OF MISSISSIPPI                                    APPELLEE

DATE OF JUDGMENT:              04/12/2021
TRIAL JUDGE:                   HON. DAVID H. STRONG JR.
COURT FROM WHICH APPEALED:     LINCOLN COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:        OFFICE OF STATE PUBLIC DEFENDER
                               BY: GEORGE T. HOLMES
ATTORNEY FOR APPELLEE:         OFFICE OF THE ATTORNEY GENERAL
                               BY: BARBARA WAKELAND BYRD
DISTRICT ATTORNEY:             DEE BATES
NATURE OF THE CASE:            CRIMINAL - FELONY
DISPOSITION:                   AFFIRMED - 10/25/2022
MOTION FOR REHEARING FILED:

**BEFORE WILSON, P.J., McCARTY AND SMITH, JJ.**

**WILSON, P.J., FOR THE COURT:**

¶1.     James Davon O'Quinn was convicted of the armed robbery of a Dollar General on

Highway 84 in Lincoln County. On appeal, O'Quinn argues that his trial counsel provided

ineffective assistance by failing to object to multiple instances of hearsay. However, we find

no merit to this claim and affirm O'Quinn's conviction and sentence.

## FACTS AND PROCEDURAL HISTORY

¶2.     Amiracle Smith was working the cash register at the Dollar General on Highway 84

in Lincoln County on the night of April 6, 2018. Just after 9 p.m., she was ringing up a sale

when a heavy-set black male in a black and blue hoodie entered the store brandishing a

handgun. While pointing the gun at Smith, the man moved behind the register, voided the in-process transaction, opened the register, and took approximately $130. He then exited the store and ran to a gold Chevrolet Malibu waiting in the parking lot.

¶3. When the robber entered the store, Steven Martin Jr. was in the checkout line. Martin followed the robber out of the store, ran to his own pickup truck, and retrieved a shotgun. After the robber jumped into the front passenger door of the Malibu, Martin attempted to stop the car by shooting the front passenger-side tire. However, he missed the tire, and the slug went through the car's windshield.[1] On cross-examination, Martin admitted that his shot was "a pretty big miss," but he explained that he was using a "1940 shotgun" without "a bead on the front." Martin testified that as the Malibu drove away, the front passenger door opened, and the passenger's head and hand protruded from the car before "he got pulled back in and the door got shut and they drove off." Martin testified that the man who protruded from the front passenger door was *not* the man who had robbed the store. The Malibu then sped away.

¶4. Shortly after the robbery, a "silver goldish Malibu" was seen at a gas station nearby on Highway 51. Law enforcement stopped the vehicle and detained its occupants, Trelin McWilliams and M.M.C., who was then sixteen years old.[2] McWilliams and M.M.C. told officers that they had dropped O'Quinn "out at the hospital." There was also a two-year-old

---

[1] A photograph in the record shows what appears to be a bullet hole in a car's front windshield. As O'Quinn notes in his brief, no witness actually testified regarding the photo, but it was admitted at trial without objection. Martin also testified without objection that he "[found] out later [that the slug] went through the windshield."

[2] We use only M.M.C.'s initials because he was a minor at the time.

child in the backseat of the Malibu. The child was identified as O'Quinn's niece.

¶5. Officers searched M.M.C. and found a roll of money totaling $135 and a handgun in his pocket. The money had blood on it. DNA testing later determined that the DNA profile of the blood was consistent with O'Quinn's DNA profile and "occurred with a frequency of approximately one in greater than ten billion random, unrelated persons."

¶6. Officers also observed what appeared to be blood on the Malibu's gear shift and steering wheel. In the trunk, they found clothes matching the description of those worn by the robber, including a black and blue hoodie and dark sweatpants. The clothes also had blood on them, and the pants had a hole near the right thigh with blood around it. Testing confirmed the presence of blood on the clothes, but that blood was not subjected to DNA analysis because law enforcement determined that O'Quinn had been the only occupant of the car who was bleeding.

¶7. Investigator Leslie Falvey later went to King's Daughters Medical Center in response to a call about a man who claimed to have been robbed after leaving a nearby bank. The man—O'Quinn—had wounds to his right hand and right thigh. The wound to his thigh appeared consistent with the hole in the pants recovered from the trunk of the Malibu. O'Quinn was charged with armed robbery.

¶8. Falvey testified that O'Quinn was identified as a suspect based on his connection to

3

the getaway car,[3] his leg wound, and the fact that McWilliams and M.M.C. said they had dropped him off at the hospital.

¶9. At O'Quinn's trial, Smith identified O'Quinn as the robber. She testified that although O'Quinn's hoodie was "cinched up" during the robbery, she could identify him because she could see his eyes, nose, and parts of his mouth during the robbery.[4] She also testified that O'Quinn's ability to work the cash register stood out to her because, in her view, only someone who had worked at Dollar General would have the knowledge to quickly void a sale and open the cash drawer.

¶10. Robert Sanchez, a Dollar General regional manager also testified that an untrained person likely would have difficulty voiding a sale and opening the cash register.[5] Sanchez confirmed that O'Quinn was a former Dollar General employee, having worked at both the Roxie and Meadville stores. Neither McWilliams nor M.M.C. had ever worked at a Dollar General. Surveillance video of the robbery was also admitted into evidence and played for the jury. The State argued that the robber was the same height and build as O'Quinn.

¶11. At the close of the State's case-in-chief, the court denied O'Quinn's motion for a

---

[3] Falvey testified that they learned the car was "believed" to have been in the possession of O'Quinn's mother, although it was registered to someone else.

[4] A month after the robbery, Smith identified O'Quinn as the robber in a photo lineup. However, Smith acknowledged that before she picked O'Quinn out of the photo lineup, she already had seen his mug shot in a local newspaper.

[5] Martin also testified that during the robbery, Smith "was starting to cry" and "getting really scared," so the robber "moved her out of the way, hit a couple of buttons, popped the register open, grabbed the money, [and] ran out."

4

directed verdict. O'Quinn then rested without testifying or calling any witnesses. In its closing argument, the State argued that either McWilliams or M.M.C. was seated in the front passenger seat of the Malibu during the robbery; that O'Quinn entered the car through the front passenger side door because that "door was closest along his flight path from the store"; that O'Quinn climbed over McWilliams or M.M.C. to reach the driver's seat; and that O'Quinn was injured by glass shards and possibly fragments of the slug. The jury found O'Quinn guilty of armed robbery, and the court sentenced him to thirty years in the custody of the Department of Corrections, with ten years suspended and twenty years to serve, and five years of post-release supervision. O'Quinn filed a motion for judgment notwithstanding the verdict or a new trial, which was denied, and a notice of appeal.

**ANALYSIS**

¶12. In his sole assignment of error on appeal, O'Quinn argues that his trial counsel's failure to object to multiple instances of hearsay amounted to constitutionally ineffective assistance of counsel and deprived O'Quinn of a fair trial.

¶13. A defendant's constitutional right to counsel "is the right to the effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)). "Generally, ineffective-assistance-of-counsel claims are more appropriately brought during post-conviction proceedings." *Ross v. State*, 288 So. 3d 317, 324 (¶29) (Miss. 2020) (brackets omitted) (quoting *Bell v. State*, 202 So. 3d 1239, 1242 (¶12) (Miss. 2016)). However, "[t]his Court will address such claims on direct

5

appeal when [1] the record affirmatively shows ineffectiveness of constitutional dimensions, or [2] the parties stipulate that the record is adequate and the Court determines that the findings of fact by a trial judge able to consider the demeanor of witnesses, etc., are not needed." *Id.* (quotation marks and other brackets omitted). In addition, we may address such "claims on direct appeal when the record affirmatively shows that the claims are without merit." *Id.*

¶14. To prevail on a claim of ineffective assistance, O'Quinn must show *both* (1) "that counsel's performance was deficient"—i.e., "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"—*and* (2) that he was prejudiced as a result—i.e., "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. O'Quinn "bears the burden of proving both prongs of *Strickland*." *Ravencraft v. State*, 989 So. 2d 437, 443 (¶31) (Miss. Ct. App. 2008). "If either prong is not met, the claim fails." *Havard v. State*, 928 So. 2d 771, 781 (¶8) (Miss. 2006).

¶15. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Therefore, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (quotation marks omitted); *see also Branch v. State*, 882 So. 2d 36, 52 (¶26) (Miss. 2004) ("Trial counsel is presumed competent, and the burden of proving that counsel's performance was deficient and prejudicial falls upon

the Appellant.").

¶16.     In general, "the failure of counsel to make certain objections may fall within the ambit of trial strategy, and therefore may not give rise to a claim for ineffective assistance of counsel." *Morrow v. State*, 275 So. 3d 77, 84 (¶25) (Miss. 2019) (brackets and footnote omitted); *see also Shaheed v. State*, 205 So. 3d 1105, 1112 (¶21) (Miss. Ct. App. 2016) ("Trial judges are not expected to strike or exclude hearsay sua sponte. Whether to object is a decision left to the discretion of counsel, who may have strategic reasons for not objecting."). In addition, as with any claim of ineffective assistance, the defendant must show that counsel's failure to object prejudiced him and deprived him of a fair trial. *Morrow*, 275 So. 3d at 83-84 (¶¶24-28). In this case, O'Quinn argues that his trial counsel provided ineffective assistance by failing to object to Falvey's testimony that (a) the two-year-old in the Malibu with McWilliams and M.M.C. was O'Quinn's niece; (b) the Malibu was "believed" to be possessed by O'Quinn's mother; (c) O'Quinn was "the only occupant in the car [who] was bleeding"; and (d) McWilliams and M.M.C. "said that they had put [O'Quinn] out at the hospital."

¶17.     Because there was no hearsay objection during trial, the State did not have an opportunity to articulate a basis for admitting the testimony that O'Quinn now challenges as hearsay. Nonetheless, we think that some or all of the challenged statements could have been

7

admitted on the ground that they were offered for a non-hearsay purpose.[6] An out-of-court statement is hearsay only if it is offered "to prove the truth of the matter asserted." M.R.E. 801(c). Thus, to determine whether a statement is hearsay we must first determine the purpose for which it was offered and admitted. *Smith v. State*, 258 So. 3d 292, 309 (¶50) (Miss. Ct. App. 2018). Our Supreme Court and this Court have held repeatedly that out-of-court "[s]tatements do *not* constitute hearsay when admitted" not to prove the truth of the matter asserted but rather "to explain an officer's course of investigation or motivation for the next investigatory step by that officer." *Eubanks v. State*, 291 So. 3d 309, 322-23 (¶51) (Miss. 2020) (emphasis added) (quoting *Smith*, 258 So. 3d at 309 (¶52)).

¶18.    In this case, although the record is not entirely clear regarding the sequence in which Falvey and other officers obtained various pieces of information, the testimony O'Quinn challenges was offered at least in part to explain the course of Falvey's investigation and why he came to identify O'Quinn as the prime suspect in the case.

¶19.    Moreover, Falvey's testimony that O'Quinn was the only occupant of the car who was bleeding was based on his personal observations of McWilliams and M.M.C. Falvey testified that he swabbed the hoodie because there appeared to be blood on it, but he "did not

---

[6] Regarding Falvey's testimony that the child in the car was O'Quinn's niece, we also note that there is an exception to the hearsay rule for statements regarding family history and relationships by blood or marriage. *See* M.R.E. 804(b)(4). However, because we do not know the source of Falvey's information regarding the relationship between O'Quinn and the child, we also do not know whether that exception to the hearsay rule might have applied.

end up having a [DNA] comparison done because through the course of [his] investigation it was determined the only occupant in the car that was bleeding was Mr. O'Quinn." Later, Falvey testified:

> Q. All right. Investigator Falvey, you mentioned that of the three people, [M.M.C.], McWilliams and O'Quinn, Mr. O'Quinn was the only one injured? In what way? Or bleeding -- did you say bleeding or injured?
>
> A. Bleeding.
>
> Q. Okay.
>
> A. Or any apparent injuries because I personally looked at the hands of [M.M.C.] and Trelin McWilliams. And also I did photograph injuries to Mr. O'Quinn.

¶20. This testimony was based on Falvey's personal observations of these three men, not any statement from an out-of-court declarant. Accordingly, this testimony was not hearsay. *See Hicks v. State*, 6 So. 3d 1099, 1103 (¶16) (Miss. Ct. App. 2008). To the extent that Falvey's testimony was not hearsay or was offered for a non-hearsay purpose, the lack of an objection by trial counsel was not ineffective assistance. *See Edwards v. State*, 615 So. 2d 590, 597 (Miss. 1993) (holding that trial counsel "was not constitutionally ineffective for failing to object to" certain evidence because, based on the applicable law, trial counsel "could have reasonably expected any objection to be futile").

¶21. Moreover, even if we assume solely for the sake of argument that objections to some of the four statements noted above would have been sustained, O'Quinn still bears the burden of satisfying the second prong of *Strickland*. *Ravencraft*, 989 So. 2d at 443 (¶31); *Havard*,

9

928 So. 2d at 781 (¶8). Under *Strickland*'s second prong, O'Quinn must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. More specifically, O'Quinn "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. On the record in this case, O'Quinn cannot meet this burden.

¶22. The evidence against O'Quinn was overwhelming. The victim, Smith, positively identified O'Quinn as the robber. A short time after the robbery, the getaway car was located, and when its occupants were searched, officers found a bloodstained roll of money containing approximately the same amount stolen from the Dollar General. DNA testing established that the blood on the money was O'Quinn's blood. There was also blood on the steering wheel and gear shift of the Malibu, and in the trunk of the car officers found bloodstained clothing matching the clothing worn by the robber. This clothing included both the robber's black and blue hoodie and dark pants with a hole in the right leg that was surrounded by blood. Next, when officers located O'Quinn at the hospital, they found that he had sustained wounds to his right hand and right thigh. Notably, the location of O'Quinn's leg wound matched the hole in the pants found in the trunk of the Malibu. In addition, Smith and Martin both testified that the robber was able to quickly void the transaction and open the register, suggesting that the robber had prior experience working at a Dollar General. O'Quinn had worked at two different Dollar General stores, while

neither McWilliams nor M.M.C. had ever worked at a Dollar General. Finally, the jury was able to watch surveillance video of the robbery and compare the robber's appearance, height, and build to O'Quinn.

¶23.    Given the overwhelming evidence of guilt, O'Quinn cannot "show that there is a reasonable probability that . . . the result of the proceeding would have been different" if his trial attorney would have made additional hearsay objections. *Id.*; *see also id.* at 696 (stating that counsel's errors are less likely to affect a verdict that has "overwhelming record support"); *Ward v. State*, 461 So. 2d 724, 727 (Miss. 1984) (holding that the defendant could not establish prejudice where "overwhelming evidence" established that he was "hopelessly guilty"). Therefore, even if we assume solely for the sake of argument that trial counsel should have asserted additional objections, O'Quinn fails to meet his burden under the second prong of *Strickland*, and therefore his ineffective-assistance-of-counsel claim fails. *Ravencraft*, 989 So. 2d at 443 (¶31); *Havard*, 928 So. 2d at 781 (¶8).

## CONCLUSION

¶24.    O'Quinn fails to establish that his trial counsel provided constitutionally ineffective assistance or that he was prejudiced as a result of any of counsel's alleged errors. Therefore, O'Quinn's conviction and sentence are **AFFIRMED**.

**BARNES, C.J., CARLTON, P.J., GREENLEE, McDONALD, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR. WESTBROOKS, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**

11